# FRED C. LEWIN v. HENRY E. PROEHL.[1]

November 14, 1941.

No. 32,980.

[1]Reported in 300 N. W. 814.

*O'Hara & Sheran,* for appellant.
*Herbert H. Hoar,* for respondent.

Stone, Justice.

In this action to recover for services rendered under contract the verdict was for plaintiff. Defendant appeals from the order denying his alternative motion for judgment or a new trial.

Defendant, as trustee, is liquidating Proehl & Lewin, Inc., which will be referred to as the corporation. For it plaintiff's services were rendered. The contract upon which he stands was made, if at all, by defendant as president and general manager of the corporation. The latter had been in business for some time before 1932. The corporation's only stockholders were plaintiff, defendant, and the latter's wife. Its business was that of merchandising, the principal lines being groceries and hardware. It never adopted by-laws. Nor have there been any meetings of its stockholders or directors; at least there were none until its decision to liquidate.

The evidence justifies the conclusion that, while plaintiff was secretary and treasurer of the corporation, his principal duty was as a clerk in the store. All along defendant was both president and general manager. The inference is reasonable, if not inescapable, that as such he was in sole charge and control of the business, exercising as occasion required all the powers of the corporation.

The contract upon which plaintiff relies, if made, results from a conversation between himself and defendant. For some time before 1932 the business had not been going well. Instead of a profit there was annual loss. Plaintiff and defendant had been getting a fixed compensation of $100 monthly. In 1932, according to plaintiff, there was a conversation between him and defendant in which it was agreed that plaintiff's compensation should be reduced to $75 per month. Defendant's version of that talk is that each of them, plaintiff and defendant, should withdraw from the store only enough in merchandise and cash to afford a living, with a limit of $75 a month. So the issue on the facts is narrow. For the jury it was probably not so much one of credibility as of accuracy of recollection. The verdict adopts and confirms plaintiff's version.

■ By assignment of error defendant objects strenuously to rulings admitting the conclusions of plaintiff as to the meaning of the conversation. Plaintiff did testify that he and defendant "agreed" thus and so. That was objectionable because it stated plaintiff's conclusion or inference rather than the conversational facts upon which it was based.

Counsel for plaintiff had too much difficulty in framing his questions so as to elicit the basic facts; that is, the substance of the conversation, rather than plaintiff's conclusion concerning its result. But, after much difficulty and too much of leading questions, the details of the conversation were obtained from plaintiff. He stated in substance what it was, what each of the participants said, and what "we said" was that plaintiff's compensation was to be reduced from then on to $75 per month.

The argument at this point for defendant is hypertechnical in that it overlooks an inherent limitation in application of the rule invoked. Human recollection is not photographic. It has no sound track to record conversation with verbal precision. While a mere conclusion of the witness as to the meaning of what was said is incompetent, the best rendition he can make of the substance of the matter is all that can be expected. According to

Dean Wigmore (7 Wigmore, Evidence [3 ed.] § 2097), if the exact words "cannot be laid before the jury, then the witness' inferences, or net impressions, are by that very rule [the opinion rule] allowable. Consequently, if his memory of the precise words fails him, his impression of their net meaning is not forbidden by the Opinion rule. That rule does not require the impossible; it merely forbids the superfluous. It does not, in its proper use, commit the absurdity of saying that, even when the witness cannot remember the precise words, he is forbidden from giving any account at all of what he heard. Nevertheless, some Courts, misguided by the Opinion rule, have reached that result."

Among the illustrative cases cited by Dean Wigmore as dealing correctly with the problem are these. In Eaton v. Rice, 8 N. H. 378, 380, this was said:

"If, then, in all cases the witness is required to state what was said so accurately that the jury may be enabled to judge by the terms used what a contract was, it must frequently happen that a contract not in writing cannot be proved at all * * * the recollection of a witness, as to what an agreement between parties was, according to his understanding of what was said by them at the time, may be very satisfactory evidence, although he may not be able to recollect distinctly one word that was said."

In Bathrick v. Detroit P. & T. Co. 50 Mich. 629, 637, 16 N. W. 172, 175, 45 Am. R. 63, Judge Cooley said this concerning testimony of an admission of carnal intercourse:

"It would have been entirely proper to permit the witness to testify that he had conversations in which the criminal intercourse was admitted or assumed, even though he did not remember the words made use of. It is not surprising that a man should remember the substance or the result of a conversation, and yet not be able to recall the words made use of; and it sometimes casts suspicion upon the veracity of a witness that he assumes to remember the very words of a conversation when there was nothing

in the case which was likely to impress upon his mind anything beyond the general result."

The question of credibility is for the jury. The question of admissibility is for the court, which must decide whether the testimony is a real effort to reproduce substance or the mere conclusion of the witness unsupported by any recollection of what the substance was.

The nature of the problem is such that rulings on it are largely a matter of discretion. Witnesses differ as much in their command of words as they do in accuracy and retentiveness of memory. None should be encouraged to substitute his own inference for the facts from which it is drawn. On the other hand, testimony should not be excluded simply because the witness has difficulty in stating his recollection in terms of fact rather than inference. As to so simple an issue as we have here, it matters little whether the testimony is that "we said" that the wages would be $75 monthly, or that we "agreed" upon that figure.

■ Error is assigned upon refusal of the trial court to admit evidence in detail concerning the respective investments of plaintiff and defendant in the business and the reasons for and extent of the loss likely to result to both. The evidence offered was on a collateral issue. The argument for defendant is that, if admitted, it would have tended to show that defendant's version of the matter had more probability of truth than plaintiff's. Glassberg v. Olson, 89 Minn. 195, 94 N. W. 554. The rule thus invoked goes on to declare that the admission of such evidence concerning the collateral issue rests ordinarily in the discretion of the trial judge. Here, we are unable to see any abuse of that discretion. It may be added that the jury, if they thought about the matter at all, could not have concluded otherwise than that defendant's loss in the business would be much greater than that of plaintiff.

■ Annually for many years independent audits of the corporation's business were made. Over defendant's objection, several of such audits were admitted. They set up as annual expense

plaintiff's salary of $900, the precise figure which he testified was fixed by the agreement between himself and defendant. They were admissible as admissions by the corporation and defendant, notwithstanding that on their face they appear to have been based upon information furnished by plaintiff alone. The record discloses that they were made, and had to be, for income tax purposes if for no other. Defendant knew that they were being made and personally participated in taking the inventory reflected by each audit. They were part of the corporation's records. If defendant, as principal stockholder, president, and general manager, did not know all about them it was his business to know. If they were false in any particular it was his duty to have them corrected to conform to the truth. Defendant simply cannot successfully plead ignorance concerning them. Neither can the corporation.

■ Futile also is the argument that the contract made by defendant for it was not binding on the corporation. In view of the evidence concerning the manner in which the stockholders, by acquiescence, and two of the three by active participation, had committed the corporation's business to the control of defendant, "we are not troubled" with the claim that there was no evidence from which could be found authority in defendant to contract, as the jury has found he did, on behalf of the corporation. Harmon v. Central B. & L. Assn. 171 Minn. 343, 344, 214 N. W. 56. A similar case is Chrysler v. Randolph S. & G. Co. 155 Minn. 297, 193 N. W. 677.

At this point the argument for defendant ignores the fact that stockholders of a corporation may express themselves by conduct as fluently and plainly as by formal, recorded action. Here was a clear case of implied authority in defendant as president and general manager. By that is meant authority implied or inferred from the facts. The result is an authority which is not merely apparent or created by estoppel. It is authority actually conferred, its expression being found in conduct rather than words. Schlick v. Berg, 205 Minn. 465, 286 N. W. 356.

██ The motion for new trial was based in part upon newly discovered evidence consisting of a document from which can be got, by inference, an admission by plaintiff that he did not have the claim he now asserts. It was the view below that this evidence could have been discovered before trial by due diligence on behalf of defendant. We cannot disagree. Only a general inquiry was made on behalf of defendant of the custodian of the document whether he had anything that would be helpful to defendant in this case. His answer was negative. His file was protected by no privilege. Counsel could have made personal examination of its contents. They did not do so. For that reason and without more, we consider it beyond our proper function to reverse the order denying a new trial insofar as it is based upon newly discovered evidence.

Order affirmed.

Mr. Chief Justice Gallagher took no part in the consideration or decision of this case.

