Taut, J.
 

 It is the contention of Miller that there is substantial evidence in the record tending to prove that Paul Wick, assuming to act on behalf of the build
 
 *95
 
 ing company, entered into an oral agreement with Miller and Rand; that, under such agreement, the building company was to pay Miller and Rand a commission for securing a buyer, ready, willing and able to purchase the Wick building at a price of $800,000 net cash to the building company, and such commission was to be whatever amount such buyer agreed to pay in addition to such price; and that Miller and Rand did secure such a buyer who agreed to pay $850,000 for the building. It is conceded that the building was not sold by the building company.
 

 The trial judge determined, as a matter of law, that Wick had authority to enter into such an agreement for the building company and so instructed the jury. The issues, as to the making of the agreement and its performance, were submitted to the jury.
 

 The Court of Appeals’ decision was based upon the conclusion that, as a matter of law, Wick had no authority to enter into such an agreement.
 

 Of course, the fact, that one undertakes to make a contract as agent for a party, does not necessarily result in such party being bound by the contract made.
 
 Bradford Belting Co.
 
 v.
 
 Gibson,
 
 68 Ohio St., 442, 67 N. E., 888, paragraphs three and four of the syllabus. In order to enforce any rights against such party under such a contract, it is necessary to establish that the one who assumed to act as agent for that party had power to make the contract for that party. Mechem on Agency (2 Ed.), 527, Section 743.
 

 In the instant case, it is conceded that the building company never expressly authorized Wick to enter into an agreement such as the one which Miller seeks to enforce.
 

 However, even where one assuming to act as agent for a party in the making of a contract has no actual authority to so act, such party will be bound by the contract if he has by his words or conduct, reasonably
 
 *96
 
 interpreted, caused the other party to the contract to believe that the one assuming to act as agent had the necessary authority to make the contract. Restatement of the Law of Agency, 76, Section 27; 1 Ohio Jurisprudence, 674, Section 34. See
 
 Kroeger, Supt.,
 
 v.
 
 Brody, Trustee,
 
 130 Ohio St., 559, 200 N. E., 836. In such instance, the term “apparent authority” is often used to describe or label what is so treated as the equivalent of authority. That term will be so used in this opinion.
 

 It is apparently conceded and the record clearly discloses that Miller had never dealt with Wick before and had no knowledge of any words or conduct of the building company, its officers, directors or shareholders, which might have indicated that Wick had the authority to make, on behalf of the building company, the contract upon which Miller relies.
 

 But Miller states in his reply brief that he and Rand “were joint adventurers” and that “the knowledge of one joint adventurer being available to both, there is clearly enough evidence in this case to permit a jury to find that Paul Wick had such apparent authority as would estop The Wick Building Company from proving the contrary. ’ ’
 

 If, as Miller contends, the knowledge of Rand was available to Miller, still there is nothing in the record tending to prove any words or conduct of the building company, its officers, directors or shareholders, other than Wick, which, when reasonably interpreted, could have caused the joint adventurers to believe that Wick had authority to make, on behalf of the building company, the contract relied upon by Miller.
 

 While Rand testified that he had been acting as broker for Wick, and for companies of which Wick was an officer, for 15 or 20 years and that no other broker in Youngstown handled properties of Wick or of those companies, Rand testified that he, as a broker,
 
 *97
 
 had not bought or sold any of such properties but had only rented them. The only other evidence on that subject confirms his testimony. While Rand testified that he had been authorized by Wick to sell the other smaller building belonging to the building company, that building was admittedly not sold, and there was no evidence tending to prove that any other officer, director or shareholder of the building company knew that Wick had authorized Rand to sell that smaller building. There was no evidence that Rand knew what the corporate powers of the building company were or what corporate action had or had not been taken by the directors or shareholders of the building company.
 

 While the evidence was such as to indicate that Rand might reasonably have believed that Wick had been knowingly permitted by the building company to rent properties of the building company, there was no evidence which would justify any reasonable inference that Rand might reasonably have believed that Wick had been knowingly permitted by the building company to sell properties of the building company. There was not even any evidence of such sales.
 

 While it might be inferred from the record that Wick had, at some indefinite time between 1941 and 1945, purchased the other smaller building on behalf of the building company, there was no evidence that Rand might reasonably have believed that Wick had not been expressly authorized by the board of directors of the building company to do so. There is not even any evidence that Rand had any knowledge about the purchase of that building.
 

 When it is remembered that the building, involved in the contract relied upon by Miller, had been owned by the building company since its incorporation in 1910 and represented in value more than three fourths of the total assets of the building company, it becomes
 
 *98
 
 obvious that the power to make a contract such as that relied upon by Miller was not included among any apparent powers which the building company had knowingly permitted Wick to exercise. See
 
 Kroeger, Supt.,
 
 v.
 
 Brody, Trustee,
 
 supra; 1 Ohio Jurisprudence, 674, Section 34.
 

 Miller contends further that, even if no words or conduct of the building company caused him to believe that Wick had the necessary authority to make the contract upon which Miller relies, the building company would be bound by such a contract, made on its behalf by Wick, because the evidence disclosed that Wick had implied actual authority to make such a contract.
 

 If a party by his words or conduct, reasonably interpreted, has caused one, assuming to act as agent for such party in the making of a contract, to believe that such one had the necessary authority to make the contract, such party will be bound by the contract, regardless of whether any words or conduct of such party caused the other party to the contract to believe that the one so assuming to act as agent had authority to make the contract. Restatement of the Law of Agency, Section 26;
 
 Kimball
 
 v.
 
 Kimball Bros., Inc.,
 
 143 Ohio St., 500, 56 N. E. (2d), 60. See
 
 State, ex rel. Squire, Supt.,
 
 v.
 
 Frasier,
 
 133 Ohio St., 283, 13 N. E. (2d), 248. In such instances, the terms “implied authority” or “actual implied authority” are often used to describe or label what is so treated as the equivalent of authority. Those terms will be so used in this opinion.
 
 *
 

 If the law did not impose liability upon the principal where there was such implied authority, then one who, in good faith and in reasonable reliance on words
 
 *99
 
 or conduct of another party causing him to believe that he had authority to do so, made a contract on behalf of such party would be exposed to liability for a breach of his implied warranty of authority to make such contract.
 
 Trust Co. v. Floyd,
 
 47 Ohio St., 525, 26 N. E., 110, 12 L. R. A., 346. See
 
 Jackson
 
 v.
 
 Watkins,
 
 128 Ohio St., 407, 191 N. E., 483.
 

 This raises the question as to whether there is any evidence in the record which would justify a finding by reasonable minds that The Wick Building Company or its directors or shareholders by any words or conduct, when reasonably interpreted, had caused Wick to believe that he had the necessary authority to make the contract relied upon by Miller.
 

 Wick testified that, while he had discussed informally with the directors the matter of a sale of the Wick building, he never received any authority from the board of directors of the building company to sell that building as a building; that it had been the practice of the directors and shareholders of the company to discuss matters among themselves from time to time and to come to decisions and authorize him to act in accordance with those decisions without putting any record of his authority in the corporation minute book; and that, if there was a matter of importance in connection with the business of the building company, every director would be contacted. There is no evidence in the record tending to dispute any of the foregoing testimony. Some of his testimony would justify the inference that he had been authorized by the shareholders to effect a sale of their stock, if the result of that sale would enable the shareholders to realize $1,000,000 for their stock, or perhaps realize $800,000 therefor and retain the other smaller building of the building company. The evidence shows without dispute that the reasons for this indirect method of disposing of the Wick building, so as to
 
 *100
 
 realize in effect $800,000 on its disposition, were the income tax laws which would have required payment by the building company of a very substantial tax if the building company sold the Wick building for $800,000.
 

 Two of the other directors of the building company testified that they did not, either at a formal or informal meeting of the board, ever tell Wick to try to sell the Wick building.
 

 It is clear from Wick’s testimony that he never believed that he had the authority to make the contract relied upon by Miller.
 

 As hereinbefore indicated, it is to protect the agent from liability on a breach of his implied warranty of authority that recovery is allowed against a principal, whose words or conduct, when reasonably interpreted, has caused one assuming to act as his agent in the making of a contract to believe that he had the necessary authority to make the contract. Obviously, where the words or conduct of the principal has not caused any such belief, there is no justification for giving the agent such protection. See
 
 Jackson
 
 v.
 
 Watkins, supra,
 
 409, 410. Where this reason for imposing liability on the principal is not present, the other party to the contract does not have any rights thereon against the principal on the mere ground that the agent had actual implied authority. Cf.
 
 Anderson
 
 v.
 
 State,
 
 22 Ohio St., 805.
 

 It is argued that the foregoing rule would enable a corporation to escape liability on the false testimony of an agent to the effect that he knew that he had no such authority. However, the falsity of such testimony can usually be brought out by evidence as to acts of the agent which are inconsistent with his testimony that he knew he did not have such authority. Cf.
 
 Anderson
 
 v.
 
 State, supra.
 

 Ordinarily, in a case of this kind, the question of whether the agent believed that he had authority to
 
 *101
 
 make a contract is a question of fact for determination by the jury. It is only where the evidence is such that reasonable minds could not conclude that the agent so believed that a court will decide, as a matter of law, that the agent did not so believe.
 

 It is argued that the fact, that Wick did assume to act for the building company in making the contract relied upon by Miller, is substantial evidence tending to prove that he did believe that he was authorized to make it. However, even if a jury might have found, on the evidence, that the words or conduct of Wick would justify a reasonable man in the position of Miller to believe that Wick intended to make such contract, the evidence is undisputed that Wick had no such actual intention. Cf.
 
 Butler
 
 v.
 
 Moses,
 
 43 Ohio St., 166, 1 N. E., 316. The undisputed evidence shows that, because of the tax problem involved, the building company had no interest in making a sale of the Wick building and Wick’s only interest in a sale of this building was an interest in selling the stock of the building company. In that, he was acting, not as agent for the building company, but as agent for its shareholders.
 

 It cannot reasonably be argued in this case that Wick believed that he had authority to sell the Wick building because of the powers that the directors, officers and shareholders of the building company had previously permitted him to exercise. There is no evidence that he had ever sold any real estate for the company or even that the company, during its 37 years of existence, had ever sold any real estate. Certainly, under those circumstances, Wick, who was only one of 26 shareholders and one of seven directors and who owned only 38 out of 2,350 shares of the building company, could not reasonably have believed that he had implied authority to sell a building representing over three fourths in value of the total assets of the
 
 *102
 
 corporation, regardless of how much authority he had previously been permitted to exercise in the management of the affairs of the corporation which consisted entirely of the maintenance, repair and rental of its buildings.
 

 There is substantial evidence, including the testimony of Wick, that he was general manager of the building company and had general charge of the conduct of its business. Miller argues that, in the absence of any evidence disclosing a limitation on Wick’s powers, it follows that Wick had actual implied authority to exercise, on behalf of the corporation, its full corporate powers including the power to sell real estate. In support of this contention, Miller relies upon
 
 Jenkins Steamship Co.
 
 v.
 
 Preston,
 
 186 F., 609;
 
 Eastern Rolling Mill Co.
 
 v.
 
 Michlovitz,
 
 157 Md., 51, 145 A., 378;
 
 Kitzmiller
 
 v.
 
 Pacific Coast & Norway Packing Co.,
 
 90 Wash., 357, 156 P., 17;
 
 Phoenix Finance Corp.
 
 v.
 
 Iowa-Wisconsin Bridge Co.,
 
 40 Del., 500, 16 A. (2d), 789;
 
 Navco Hardwood Co.
 
 v.
 
 Bass,
 
 214 Ala., 553, 108 So., 452;
 
 Lewin
 
 v.
 
 Proehl,
 
 211 Minn., 256, 300 N. W., 814;
 
 Chestnut Street Trust & Savings Fund Co.
 
 v.
 
 Record Publishing Co.,
 
 227 Pa., 235, 75 A., 1067; and
 
 Sun Printing & Publishing Assn.
 
 v.
 
 Moore,
 
 183 U. S., 642, 46 L. Ed., 366, 22 S. Ct., 240.
 

 While there is broad language in the opinions of some of those cases which, when literally applied, tends to support that contention, we are of the opinion that it was not necessary for the courts, in any of those cases, to state the rule of law so broadly in order to sustain the de«isions reached.
 

 In each of those cases, it appears that there had been either subsequent acquiescence by the board which amounted to ratification of the contract involved, previous acquiescence by the board in similar contracts entered into by the managing officer, or that
 
 *103
 
 the contracts involved were directly related to the business which had actually been carried on by the corporation.
 

 In the instant case, there is no claim that the board had ratified the making of the contract relied upon by Miller; there is no evidence that Wick had ever previously made, or that the board knew that he had endeavored to make, any contract relating to sale of any of the building company’s assets; and there was no evidence that the building company ever actually carried on the business of buying and selling real estate.
 

 As stated by Lockwood, J., in
 
 Lois Grunow Memorial Clinic
 
 v.
 
 Davis,
 
 49 Ariz., 277, 286, 66 P. (2d), 238:
 

 “The usual language of the textwriters is that a general manager has the power to do anything which the corporation itself might do. On examining the cases, however, we think that this statement of the powers of a general manager is too broad, and that the better authorities hold that his authority is limited to that which is usual and necessary
 
 in the ordinary course of the business actually followed by the corporation,
 
 and not to extraordinary powers conferred, indeed, upon the corporation by its charter and which may be exercised by its board of directors, but outside the scope and purpose of the business of the corporation as actually carried on. We think the confusion has arisen to a great extent from the difference in the powers granted corporations by their charters in past and in modern times. Most corporations organized many years ago were limited in their powers as set forth in their charter to the particular business in which they actually intended to engage and those things naturally correlative thereto. The charter powers and the actual operations of the corporation coincided and it was quite proper to say in general language that the manager could do anything which the
 
 *104
 
 corporation itself conld do. But of more recent times, for some reason, the charters of corporations organized under general statutes usually attempt to include the right to do everything which a private individual can do, and many things which he cannot, although the incorporators have no intention of ever exercising a tithe of the powers conferred by the charter, and as a matter of fact limit their activities to one or two of those powers. Under such circumstances, language quite appropriate to the older charters becomes wholly inappropriate when applied to the latter ones.” See, also, annotation, 159 A. L. R., 796, 802.
 

 In our opinion, in the absence of evidence to the contrary, the implied authority of a general manager of a corporation does not extend beyond authority to do that which is usual and necessary in the ordinary course of the business which has actually been engaged in by the corporation.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart and Turner, JJ., concur.
 

 *
 

 It may be observed that use of these terms may sometimes lead to confusion because of another type of authority, sometimes described or labeled as “implied authority” or “actual implied authority.” This other type of authority is such as can be said to be implied from authority or power expressly conferred. This type of implied authority is not involved in the instant case. It is unnecessary, therefore, to decide, and we do not decide, whether the same conclusions would be reached with regard to this other type of implied authority as with regard to the type of implied authority dealt with in the opinion.