AMMERMAN, APPELLANT, *v.* AVIS RENT A CAR SYSTEM, INC., APPELLEE.

(No. 81AP-745—Decided September 23, 1982.)

*Mr. C. William Malone,* for appellant.
*Messrs. Guren, Merritt, Feibel, Sogg & Cohen, Mr. Nathan Gordon* and *Mr. Kenneth R. Cookson,* for appellee.

McCORMAC, J. Plaintiff-appellant, Mary K. Ammerman, has appealed the judgment entered by the court dismissing her claims for ejectment, rent and damages for breach of a lease agreement, as filed against defendant-appellee, Avis Rent A Car System, Inc. The entry followed a nonjury trial. Plaintiff's appeal focuses on the following assignments of error:

"The Trial Court, contrary to the uncontroverted evidence and the law, erred:

"I. In finding that there was no valid enforceable lease of the 3022-3026 Fourteenth Avenue, Columbus, Ohio, premises.

"II. In finding that there was no valid enforceable agreement between the

parties to lease the 3022-3026 Fourteenth Avenue, Columbus, Ohio, premises.

"III. In finding that there was no termination of the lease of the 3021 Switzer Road, Columbus, Ohio, premises.

"IV. In dismissing the Complaint of Plaintiff."

The dispute arose from a series of agreements between the parties for the lease of certain commercial buildings owned by plaintiff and located on Switzer Road and on Fourteenth Avenue in Columbus. Throughout the negotiations, plaintiff's husband was authorized to represent her and to manage the properties. According to the testimony at trial, he dealt exclusively with Richard Gonzales, the Ohio Zone Manager for the defendant. Further testimony indicated that Gonzales forwarded all documents arising from the negotiations to his superiors in defendant's Chicago office. However, Mr. Ammerman never received any approval, objection, or other acknowledgment from any Avis personnel other than Gonzales.

The first lease executed between the parties involved a building located on Switzer Road, to be leased for a five-year period beginning April 1, 1978. Ammerman and Gonzales negotiated another lease for a second building on Switzer Road, this one for a three-year term beginning May 1, 1979. As with the previous transaction, Ammerman had the lease prepared and sent to Gonzales. When the executed lease was not returned, Ammerman inquired and Gonzales sent a written response indicating that his prior conversations with Ammerman as well as the letter itself would serve as confirmation of Avis' intention to lease.

Ammerman and Gonzales discussed a third lease during the summer of 1979, involving property located on Fourteenth Avenue. A proposed agreement was drawn up to cover the lease of this building in keeping with the parties' negotiations. This agreement was sent to

Avis' Chicago office by Gonzales. The lease was to commence January 1, 1980, however, defendant obtained plaintiff's permission to begin occupancy on November 19, 1979. Having already occupied the premises, Gonzales informed Ammerman by letter of Avis' intention to go through with the lease according to the agreement, although he stated that the written document might not be returned until sometime later. Ammerman incorporated the agreed terms into a five-year lease, which he executed and sent to Gonzales, who in turn forwarded it to his superiors along with copies of all correspondence relating to the transaction sent between himself and Ammerman. No objection, approval, or response of any kind was ever received from Avis.

After moving into the Fourteenth Avenue premises, Gonzales also informed Ammerman that the defendant desired to terminate its lease of the Switzer Road property. Plaintiff agreed and prepared the necessary documents which were sent to Chicago, along with the lease papers for the Fourteenth Avenue property. Soon thereafter Gonzales informed Ammerman that defendant would need more time to vacate Switzer and requested a delay of the lease cancellation for one month, until January 31, 1980. Ammerman agreed to the extention, but stated that a new lease would need to be drawn up at a higher rental rate for any occupancy past January 31, 1980, in light of negotiations with other clients interested in renting the property at the higher rate. Again, no response was received to this proposal from Gonzales or any other Avis personnel.

Nothing further transpired between the parties until December 21, 1979, at which time Gonzales informed Ammerman that defendant's Chicago office was cancelling the new lease and the move to Fourteenth Avenue because of the expected economic recession. However, defendant did wish to continue occupying the Switzer Road building. Ammerman

responded that the Fourteenth Avenue lease was binding upon the defendant, as was the cancellation of Switzer, and that defendant could not remain in the Switzer premises past January 31, 1980, unless it entered into a new lease. Nevertheless, defendant vacated Fourteenth Avenue without paying any rent and has continued to occupy Switzer at the original rental rate, which Ammerman has accepted with the reservation that it represents only partial payment of the actual rent owed. Since defendant vacated Fourteenth Avenue, Ammerman has successfully leased one-half of the building for a term of three years.

Plaintiff's first two assignments of error will be combined for discussion as they are interrelated. Plaintiff maintains the court's finding that no valid lease or binding agreement existed between the parties, with respect to the property on Fourteenth Avenue, is contrary to law. In support of this argument, plaintiff cites R.C. 5301.01, which makes clear that only the lessor need sign and acknowledge a lease in the presence of witnesses to make it effective. In this case, plaintiff had prepared and executed a lease after defendant had already occupied the premises. The written lease followed approval by Gonzales of a proposed agreement setting forth all the specific terms which would bind the parties. Gonzales specifically stated to Ammerman, in a letter written December 3, 1979, that all terms were in keeping with their discussions, and that the purpose of his letter was to confirm Avis' intention to go through with the lease, commencing officially on January 1, 1980, with their payment of rent, even though the paperwork might not yet have been returned from their Chicago office. No objection to the lease was ever raised by any Avis personnel, but, rather, the lease was said to be cancelled in anticipation of the oncoming economic recession. Ammerman received this information on December 21, 1979, and defendant vacated the premises early in January 1980.

Plaintiff's argument is supported by R.C. 5301.01. Having already occupied the premises, defendant made clear its intention to lease the premises. Absence of its signature as a lessee on the actual document does not invalidate the conveyance in light of the surrounding circumstances. As noted in *Zakrajsek* v. *Vesel* (App. 1930), 8 Ohio Law Abs. 660, the signature of a lessee will not be required where the lessor has signed, executed and delivered the instrument and the lessee has already entered into possession. In *Zakrajsek,* the lessee had also made rental payments which, although different from the case at issue, is not so significant as to prevent application of the case to the current dispute. The evidence is clear that the parties agreed that the lease would officially begin in January and defendant's first payment would be due at that time. Defendant actually occupied the building in November, installed telephone service, and paid the other utility bills. This conduct attests to defendant's agreement to be bound, as well as to the validity of the transaction itself.

Beyond application of the statute, appellant's position is also well-taken on the basis of her reliance upon the authority of Gonzales to bind Avis to a lease agreement. The issue here is not actual authority, but, rather, apparent authority or agency by estoppel. The terms are equivalent and based upon the same elements. *Logsdon* v. *ABCO Construction Co.* (1956), 103 Ohio App. 233 [3 O.O.2d 289]. In *Logsdon,* the court defined apparent authority as follows:

" 'This authority to act as agent may be conferred if the principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to act on an apparent agency. It is essential that two important facts be clearly established: (1) That the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent

knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. * * *' " *Id.* at 241-242.

In the case at issue, Gonzales did not have actual authority to bind Avis to any lease agreement. However, for apparent authority it is necessary to assess the nature of his responsibilities and the position in which Avis held him out to the public. The title given an employee can be suggestive of certain authority and, if the contract in question involves responsibilities closely related to the employee's assigned duties, then it can significantly affect a third party's perception of that employee's authority. See *Jeff Miller & Co.* v. *Golden Gate Apartments, Inc.* (May 24, 1979), Franklin App. No. 78AP-754, unreported.

In *Miller* we noted further:

"* * * The general tenor of judicial decisions defining 'manager' is that it is one who is charged with the management, direction or control of a business. See 26 Words and Phrases 366. * * *" *Id.* at 1391-1392.

During the last nine years, Gonzales has worked for Avis under the title of Ohio Zone Manager. He testified that he has responsibility for twenty-eight Avis locations in a three-state area, supervising in excess of two hundred fifty employees. He oversees the operations of these locations, including hiring and training personnel, purchasing and selling the fleets of cars used by Avis, all communication with the home office, and all direction given to the management team concerning accomplishment of goals. He stated that his role in obtaining the leases for these various locations was limited to investigation of prospective buildings and making recommendations to the home office as to which location should be selected. However, Gonzales also testified that he was permitted to discuss terms with the prospective lessor or agent involved.

Gonzales did discuss terms with plaintiff's agent on the leases for both Switzer Road and Fourteenth Avenue. Gonzales stated, on behalf of Avis, that the lease would go through and that the terms were acceptable as previously agreed by himself and Ammerman. Given the broad nature of his responsibilities, particularly the duty to purchase and sell fleets of cars for use by Avis, the authority to negotiate and enter into a lease for office space seems incidental to the overall scope of his employment. Furthermore, while Gonzales claims he was not permitted to negotiate on these leases, he was allowed to discuss terms. The difference between these two roles seems nebulous at best. Therefore, since it was defendant's decision to give Gonzales a wide range of responsibilities, as well as the title of Ohio Zone Manager, defendant can be held liable, under the doctrine of apparent authority, for Gonzales' role in entering into the Fourteenth Avenue lease. The nature of the communications between Gonzales and Ammerman, coupled with the light in which Avis held out Gonzales to the public, made it reasonable for Ammerman to believe Gonzales had the authority to bind Avis to the lease. On more than one occasion, Ammerman testified that he dealt only with Gonzales and was never told by Gonzales that he lacked authority. Ammerman added that he assumed Gonzales did have the authority by the way he took control of all the operations, a feeling echoed by Tip Gleaves, the real estate agent responsible for bringing the parties together. Consequently, defendant is estopped from denying that the authority existed, thereby avoiding the lease entirely.

On the basis of the foregoing discussion, plaintiff's first two assignments of error are sustained.

Plaintiff's third assignment of error claims that the court's finding, that there was no termination of the Switzer Road lease, is also contrary to the law and evidence in this case. Obviously, the same principles of agency law will apply to this transaction as did to the Fourteenth Avenue transaction just discussed.

342

The communication which transpired between Ammerman and Gonzales over the cancellation of the Switzer Road lease is found in the following. Once the Fourteenth Avenue lease was agreed upon, Gonzales wrote to Ammerman, stating:

"Furthermore, I would expect you to cancel the lease agreement on my present body shop location with the end of the current month. * * *''

This language carries the tone of authority. Following these instructions, a document was prepared and signed by plaintiff stating that the Switzer Road lease was mutually cancelled as of December 31, 1979. Soon thereafter, Gonzales informed Ammerman that he would need an extension through January 1980 before vacating the premises and that defendant would continue to pay rent through that time. Ammerman obtained plaintiff's agreement to the extension, but notified Gonzales that occupation past January was contingent upon negotiation of a new lease at a $600 monthly increase. Although no response was received to this letter, Avis continued to occupy and pay rent on the Switzer property. Gonzales' communications with regard to this transaction are equally reflective of authority to bind Avis, and the latter is estopped from denying the binding nature of its employee's conduct. Avis did occupy Switzer Road beyond the January termination date without negotiating a new lease, in spite of Ammerman's instructions to the contrary. Therefore, following their prior agreements, the Switzer Road lease was effectively terminated.

Defendant argues further that plaintiff has waived her objections by continuing to accept rental payments on the Switzer Road property, albeit payments made at the original rental amount. This argument lacks merit because plaintiff specifically informed defendant, by letter, that the rent check would be accepted as partial payment only. Plaintiff has not waived her objection, but, rather, protected herself for the amount of rent outstanding, per the agreement of the parties, at the time the extension on cancellation of the Switzer lease was requested.

Plaintiff's third assignment of error is sustained.

Plaintiff's final assignment of error is that the court's decision to dismiss the complaint was contrary to the law and evidence. This assignment of error is also sustained because the evidence introduced at trial did support plaintiff's position that there was a valid lease on the Fourteenth Avenue property and a valid termination of the Switzer Road lease. Therefore, it was error to dismiss the complaint.

Plaintiff's four assignments of error are sustained. In addition, defendant's motion to strike the reply brief filed by plaintiff is overruled as defendant has failed to show any resulting prejudicial effect. The judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

*Judgment reversed and case remanded.*

Moyer and Norris, JJ., concur.