In re Robert M. WARNOCK, Jr., and Margaret A. Warnock, Debtors.

Linda HAUGHN, Plaintiff,

v.

Robert M. WARNOCK, Jr., et al., Defendants.

Bankruptcy No. 93–3256.
Related No. 93–31482.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Dec. 15, 1994.

Jane Lackey, Toledo, OH, for plaintiff.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Motion for Summary Judgment of Defendant Mony Securities Corp. (hereafter "Mony Securities"), Plaintiff's Memorandum in Opposition, and Mony Securities' Response. This Court has reviewed the arguments of counsel, exhibits, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Motion for Summary Judgment of Mony shall be Granted.

### FACTS

The following facts can be gleaned from the transcript of the deposition of Plaintiff Linda Haughn. Defendant/Debtor Robert Warnock became acquainted professionally with Ms. Haughn through his position as an insurance salesman, though they had known each other since childhood. Mr. Warnock

was recommended to Ms. Haughn by her brother-in-law after she received an inheritance from her brother. Ms. Haughn sought and received advice on the investment of her inheritance from Mr. Warnock. It was Ms. Haughn's desire to acquire enough money through an investment strategy that she would no longer have to work.

To this end, Mr. Warnock came to Ms. Haughn's home on a number of occasions to direct her investment strategies. Ms. Haughn, considering herself unsophisticated in matters of finance and investment, accepted Mr. Warnock's advice with little hesitation. Initially, Mr. Warnock directed Ms. Haughn to invest in insurance policies and mutual funds which he sold in his capacity as an insurance agent and Series 6 broker (a broker licensed to sell mutual funds). These investments were offered through Defendant Mony Securities. All checks written for investments in Mony Securities were made payable to the investment, not Mr. Warnock.

Mr. Warnock also approached Ms. Haughn at her home concerning a personal investment unrelated to Mony Securities which he told her would help her in her goal to reach financial independence from work. This investment concerned a garbage processing business which would receive commercial trash and recycle the various types of trash into sellable products. Mr. Warnock showed Ms. Haughn pictures and sketches of the proposed facilities in a three-ring notebook, but gave her no documents or other materials. Ms. Haughn could remember no logos or other insignia of Mony Securities on the notebook.

Mr. Warnock also told Ms. Haughn that he was himself investing in the project, and gave her personal assurances that if the deal went through, she would become an eight percent shareholder. If it did not, she would receive her investment back within two or three months. Ms. Haughn was not able to recall any statements by Mr. Warnock that the investment was affiliated with Mony Securities, or that she relied upon the assumption that Mony Securities had endorsed the investment in some way.

Ms. Haughn wrote two checks totalling approximately Sixty Thousand Dollars ($60,-000.00), made payable to Mr. Warnock, as her investment in the project. Not surprisingly, the garbage processing project never got off the ground, and Ms. Haughn's investment was never returned. Mr. Warnock admits personal liability but has filed bankruptcy, listing Ms. Haughn as a creditor. Ms. Haughn initiated the present adversarial proceeding seeking to have Mr. Warnock's debt to her determined nondischargeable. Ms. Haughn has also joined Mony Securities, seeking a determination that it is also liable for Mr. Warnock's actions. Mony Securities filed a Motion for Summary Judgment, and it is that Motion which is the subject of this opinion.

## DISCUSSION

■ Summary judgment will be granted to the movant upon demonstration that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to prevail, the movant must demonstrate all elements of the cause of action. *R.E. Cruise, Inc. v. Bruggeman,* 508 F.2d 415, 416 (6th Cir.1975). A Motion for Summary Judgement must be construed in the light most favorable to the party opposing the Motion. *In re Weitzel,* 72 B.R. 253, 256 (Bankr.N.D.Ohio 1987), (quoting *In re Sostarich,* 53 B.R. 27 (Bankr.W.D.Ky. (1985)).

The Ohio Supreme Court has recently stated the law in the area of apparent authority as follows:

'Apparent authority' has been defined as ' * * * the power to affect the legal relations of another person by transactions with third persons * * * arising from * * * the other's manifestations to such third persons.' 1 Restatement of the Law 2d, Agency (1958) 30, Section 8. This Court, in *Miller v. Wick Blg. Co.* (1950), 154 Ohio St. 93, 42 O.O. 169, 93 N.E.2d 467, paragraph two of the syllabus, held that:

'Even where one assuming to act as agent for a party in the making of a contract has no authority to so act, such party will be bound by the contract if such party

has by his words or conduct, reasonably interpreted, caused the other party to the contract to believe that the one assuming to act as agent had the necessary authority to make the contract.' See also *Cascioli v. Central Mut. Ins. Co.* (1983), 4 Ohio St.3d 179, 181, 4 OBR 457, 459, 448 N.E.2d 126, 128.

Further, this court in *General Cartage & Storage Co. v. Cox* (1906), 74 Ohio St. 284, 294, 78 N.E. 371, 372, explained that, ' "[w]here a principal has by his voluntary act placed an agent in such a situation that a person of ordinary prudence, conversant in business usages, and the nature of the particular business, is justified in assuming that such an agent is authorized to perform on behalf of his principal a particular act, such particular act having been performed the principal is estopped as against such innocent third person from denying the agent's authority to perform it." * * * '

Thus, in order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: ' * * * (1) [t]hat the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. The apparent power of the an agent is to be determined by the act of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of the authority and not where the agent's own conduct has created the apparent authority. * * * ' *Logsdon v. ABCO Constr. Co.* (1956), 103 Ohio App. 233, 241–42, 3 O.O.2d 289, 293, 141 N.E.2d 216, 222–23; *Ammerman v. Avis Rent A Car System, Inc.* (1982), 7 Ohio App.3d 338, 7 OBR 436, 455 N.E.2d 1041; *Blackwell v. Internatl. Union, U.A.W.* (1983), 9 Ohio App.3d 179, 9 OBR 289, 458 N.E.2d 1272.

*Master Consol. v. BancOhio Natl.,* 61 Ohio St.3d 570, 576, 575 N.E.2d 817 (1991).

A case which is particularly illustrative of the law in the area of apparent authority is *Randall v. Allan L. Rankin Ins., Inc.,* 38 Ohio App.3d 87, 526 N.E.2d 97 (1987). In *Randall,* as in many recent cases dealing with this issue, the plaintiff sought a determination that the unauthorized actions of an insurance agent bound the insurance company to provide insurance coverage. The insurance agent told the plaintiff that insurance coverage would be provided, but did not type out the application and send it to the insurance company until some twenty days later, when a fire destroyed the insured's property. In its motion for summary judgment, the insurance company sought to deny liability. The Court held that the following indica demonstrated apparent authority of the agent: (1) the insurance company sign indicating general agency, (2) the insurance companies' stationary, (3) a document containing the signature of an insurance agent as agent for the insurance company, (4) coverage already issued to the Plaintiff, (5) the agent's acceptance of premiums on behalf of the insurance company, and (6) printed application forms bearing the insurance company's name. *Id.* at 90, 526 N.E.2d 97.

This Court can find no similar indicia of any actions taken by Mony Securities which would cloth Mr. Warnock with the authority to bind it in transactions such as the one at issue in the case at bar. Plaintiff has stated in her deposition that the only material that she was shown by Mr. Warnock was a three-ring notebook with illustrations and pictures of the proposed facilities. Though Plaintiff was familiar with Mony Securities paperwork, she could recall no stationary or any other material that contained a Mony Securities insignia, or that in any way purported to entice her reliance on Mony Securities as principal in the transaction. Plaintiff was aware that Mr. Warnock had invested in the project personally, that some of the pictures showed Mr. Warnock himself, and that the money was needed to get the proposed company started. Further, Plaintiff had to liquidate her mutual fund investment with Mony Securities in order to provide Mr. Warnock

with the funds for his investment. Perhaps most importantly, Plaintiff was never even told by Mr. Warnock that this was a Mony Securities investment, and the check was made payable directly to Mr. Warnock. All these factors support the position that the Plaintiff never considered Mony Securities as the principal in the transaction. Further, Plaintiff never relied upon the Mony Securities' credibility, but rather she relied solely upon the credibility of Mr. Warnock.

 As the Ohio Supreme Court stated, the doctrine of apparent authority protects, "a person of ordinary prudence, conversant in business usages, and the nature of the particular business," from the assumption that such an agent is authorized. *Master Consol.*, 61 Ohio St.3d at 576, 575 N.E.2d 817. It is uncontrovertable that a person of ordinary prudence would have required some sort of documentation when making such a large investment. Further, the apparent power of an agent is to be determined by the act of the principal and not by the acts of the agent. *Id.* There is simply no showing that any acts of Mony Securities clothed Mr. Warnock with the apparent authority for this type of investment. Under the standard that the Plaintiff proposes, any time an agent deals with a client on matters not pertaining to the affairs of the principal, the principal will be liable even if the agent never represented to be acting on the principal's behalf.

Thus, this Court holds that the Plaintiff has not made a sufficient showing under either prong of the test enunciated by the Court in *Master Consol.*, 61 Ohio St.3d at 576, 575 N.E.2d 817. That is, (1) that the Mony Securities did not hold Mr. Warnock out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permit him to act as a having such authority, and (2) that the Plaintiff had no reason to believe, and did not believe, that the agent possessed the necessary authority.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion. This Opinion does not address the liability of any of the other parties of concern in this Bankruptcy, other than Mony Securities.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment of Mony Securities Corp. be, and is hereby, *GRANTED*.