CHURCH et al., Appellees,

v.

FLEISHOUR HOMES, INC., et al., Appellants.

[Cite as *Church v. Fleishour Homes, Inc.*, 172 Ohio App.3d 205, 2007-Ohio-1806.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2006–CA–00233.

Decided April 16, 2007.

206

208

Robert E. Soles Jr. and Kevin C. Cox, for appellees.

Martin H. Sitler, for appellants.

GWIN, Presiding Judge.

{¶ 1} Appellant Detective Homes Inspections, Ltd. ("DHI") appeals the decision of the Stark County Court of Common Pleas that denied its motion to dismiss the trial court's proceedings. DHI argues that since the parties signed a contract that included an arbitration agreement, the dispute should be submitted to binding arbitration. Appellees Mark, Catherine D., and Catherine S. Church contend that they did not sign, nor did they authorize their real estate agent to sign the contract containing the arbitration clause, thus rendering the arbitration clause unenforceable.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} On August 9, 2003, Jeff Desjardins, a representative of DHI, presented a one-page home-inspection agreement to JoAnn Grisak, the real estate agent of the Churches. The written agreement set forth the terms and conditions of the visual/nondestructive home inspection that Desjardins was to perform at the future home of the Churches located at 7100 Deer Trail NW, in North Canton, Ohio. The inspection was requested by the Churches through their real estate agent Grisak and was done as part of their purchase of the Deer Trail residence.

{¶ 3} On the day and scheduled time of the home inspection, Desjardins met Grisak at the residence. He confirmed with her that he was to conduct the home inspection for the Churches. Before beginning his inspection, he provided Grisak with the home-inspection agreement that set forth the terms of the home inspection. After reviewing the one-page document, Grisak signed the agreement on behalf of the Churches, indicating their agreement to the terms and

conditions set forth therein by signing the document as follows: "JoAnn Grisak for Mark and Cathy Church."

{¶ 4} Upon Grisak's signing the document, Desjardins conducted the home inspection for consideration of $300. Upon Desjardins's completing his inspection, Grisak again signed the agreement for Mark and Cathy Church, indicating that the home inspection was completed in accordance with the terms of the agreement. Within the agreed-to period, Desjardins prepared a 14–page report recording his findings, which he sent directly to Mark and Cathy Church. However, it is alleged that Desjardins failed to discover and disclose significant defects in the home to the Churches. Among the significant defects in the home is mold growth that has adversely affected the health of Mark and Catherine D. Church and their seven-year-old daughter, Catherine S. Church.

{¶ 5} On February 1, 2006, the Churches filed a complaint against Ronald and Diane Marsilio (the sellers), Fleishour Homes, Inc. (the builder), and DHI. The Churches' claims against DHI initially included breach of contract, negligent misrepresentation, and violation of the Consumers Sales Practices Act ("CSPA"), and the Churches sought a declaratory judgment from the court with regard to a liquidated-damages provision contained in the home-inspection agreement.

{¶ 6} On March 8, 2006, DHI answered the Churches' complaint, denying the allegations against it and asserting various affirmative defenses, including that the claims were barred by a contractual arbitration provision.

{¶ 7} On March 22, 2006, DHI filed a motion for partial judgment on the pleadings on the grounds that the Churches had failed to support their contract claim by attaching the written instrument upon which their claims were based, as required by Ohio Civ.R. 10(D)(1). DHI also asserted that the CSPA claim was time-barred.

{¶ 8} On April 10, 2006, the Churches filed an opposition brief to DHI's motion. In their brief, the Churches stated that "[p]ursuant to a contingency in their purchase agreement with the Marsilios, Plaintiffs contracted with Defendant, Detective Homes Inspections, Ltd. ('Defendant') to perform an inspection of the home. This inspection was completed on August 9, 2003, and a written report was submitted to Plaintiffs shortly thereafter." The Churches attached a copy of the written report and home-inspection agreement to their brief as an exhibit, and requested leave of the trial court to amend their complaint by attaching the contract to the complaint.

{¶ 9} On April 13, 2006, the trial court dismissed the CSPA claim against DHI as being time-barred, and ruled that the exhibit attached to the Churches opposition brief of the inspection report and inspection agreement would be attached to the pleadings to satisfy Civ.R. 10(D)(1). Of particular relevance to

this appeal is the arbitration provision directly above the acknowledgement and acceptance section that states: "ARBITRATION PROVISION—Any dispute between the parties shall be settled by arbitration before the Better Business Bureau."

{¶ 10} On June 13, 2006, DHI filed a motion seeking to enforce the arbitration provision contained in the home-inspection agreement. Accompanying DHI's motion was an affidavit from Desjardins, the home inspector that performed the general home inspection on behalf of DHI.

{¶ 11} On June 19, 2006, the Churches field a brief in opposition to DHI's motion to enforce the arbitration provision contained in the home-inspection agreement. The Churches did not challenge the evidence DHI attached to its motion. Moreover, the Churches did not submit any evidence in support of their contentions with their opposition brief.

{¶ 12} On June 19, 2006, the Churches also filed an amended complaint. As background, the Churches requested leave of the trial court to file an amended complaint so that they could include allegations of injuries to Mark Church. On May 22, 2006, the trial court granted the Churches' request to file their amended complaint, which they filed on June 19, 2006.

{¶ 13} On June 28, 2006, DHI filed its answer to the Churches' first amended complaint. Consistent with its first answer, DHI denied the allegations against it and again asserted various affirmative defenses, including enforcement of the contractual arbitration provision.

{¶ 14} On June 30, 2006, DHI filed a reply brief to the Churches' memorandum in opposition to the motion to enforce the arbitration provision.

{¶ 15} On July 6, 2006, the Churches filed a response to DHI's reply brief.

{¶ 16} Finally, on July 11, 2006, the trial court denied DHI's motion to enforce the arbitration provision. In its judgment entry, the trial court noted that "there is no proof before the Court that the individuals signing the alleged arbitration provision, in fact, had the authority to bind the parties to this lawsuit to arbitration. The Court finds that there is no proof from an affirmative nature or negative nature concerning this issue." Further, the trial court found that "any cause of action filed by the minor child would not be subject to any arbitration provision based on the evidence presently before the court."

{¶ 17} It is from the trial court's ruling that DHI has filed the instant appeal, raising the following assignment of error:

{¶ 18} "I. The trial court erred in denying the appellant's motion to enforce the arbitration provision contained in the home inspection agreement."

## Standard of Review

{¶ 19} In *Stinger v. Ultimate Warranty Corp.*, this court held that " '[t]he issue of whether a controversy is arbitrable under an arbitration provision of a contract is a question of law for the court to decide'; therefore, our standard of review is de novo. *Gaffney v. Powell* (1995), 107 Ohio App.3d 315, 319, 668 N.E.2d 951." 161 Ohio App.3d 122, 2005-Ohio-2595, 829 N.E.2d 735, ¶ 9.

{¶ 20} R.C. 2711.01(A) provides that a provision in a written contract "to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." In general, a clause providing for arbitration "should not be denied effect unless it may be said with positive assurance that the subject arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *Duryee v. Pie Mut. Ins.* Co. (Sept. 23, 1999), 10th Dist. Nos. 98AP–1255 and 98AP–1256, 1999 WL 744341.

{¶ 21} DHI did not file a petition to stay the trial court proceedings under R.C. 2711.02. It did seek an order compelling arbitration under R.C. 2711.03. These two statutes provide for separate and distinct remedies for enforcement of an arbitration agreement. *Brumm v. McDonald & Co. Secs., Inc.* (1992), 78 Ohio App.3d 96, 100, 603 N.E.2d 1141.

{¶ 22} R.C. 2711.02 provides for indirect enforcement of an arbitration agreement by staying pending trial court proceedings on an issue that is subject to arbitration. R.C. 2711.03 provides:

{¶ 23} "The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas * * * for an order directing that the arbitration proceed in the manner provided for in the written agreement. The court *shall hear* the parties, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration * * *." (Emphasis added.)

{¶ 24} R.C. 2711.03 provides for direct enforcement by a petition to a trial court for an order compelling arbitration. *Brumm v. McDonald & Co. Secs., Inc.* In either type of proceeding, the very existence of an agreement to arbitrate can be an issue that the court must resolve. Under R.C. 2711.03, either party has the right to a jury trial if the existence of an agreement for arbitration is an issue. Under R.C. 2711.02, the trial court may, but is not required to, hold an actual trial in determining whether the issue involved in the underlying trial court proceeding is referable to arbitration under a valid arbitration agreement. *Cross v. Carnes* (1998), 132 Ohio App.3d 157, 164, 724 N.E.2d 828. Rather, the

trial court must simply be "satisfied" that the dispute is referable to arbitration under such an agreement. *Ritchie's Food Dist. v. Refrigerated Constr. Servs.,* 4th Dist. No. 02CA683, 2002-Ohio-3763, 2002 WL 1728643, ¶ 8.

{¶ 25} "When a trial court finds, after hearing the parties, that the making of an arbitration agreement is at issue and the *existence* or *applicability* of an arbitration agreement is disputed, the matter falls under R.C. 2711.03(B). R.C. 2711.03(B) requires that, when the existence of applicability of an arbitration clause is in dispute, '* * * the court shall proceed summarily to a trial of [the] issue [of whether the agreement existed and/or applied to the plaintiff].' " *Liese v. Kent State Univ.,* 11th Dist. 2003–P–0033, 2004-Ohio-5322, 2004 WL 2801698, ¶ 38.

{¶ 26} " 'When determining whether a trial is necessary under R.C. 2711.03, the relevant inquiry is whether a party has presented sufficient evidence challenging the validity or enforceability [or applicability] of the arbitration provision to require the trial court to proceed to trial before refusing to enforce the arbitration clause.' " *McDonough v. Thompson,* 8th Dist. No. 82222, 2003-Ohio-4655, 2003 WL 22052777, ¶ 13, quoting *Garcia v. Wayne Homes, LLC,* 2d Dist. No. 2001 CA 53, 2002-Ohio-1884, 2002 WL 628619, ¶ 20–21. See also *Ison v. State Farm Mut. Auto. Ins. Co.,* 148 Ohio App.3d 465, 2002-Ohio-3762, 773 N.E.2d 1101, ¶ 35.

{¶ 27} As an initial matter, we note that DHI never requested an oral hearing on the matter in the trial court. Nor did the Churches request a jury trial in their response to DHI's motion. We further note that neither party argues in this appeal that the trial court erred by failing to conduct a trial or an oral hearing prior to ruling in this matter. Nor does either party contend that they were not able to fully develop their cases concerning the arbitration clause by the trial court's consideration of the briefs and evidentiary material submitted by the parties.

{¶ 28} Summary-judgment proceedings allow the parties to be heard. Summary judgment is "a procedural device designed to terminate litigation and to avoid a formal trial where no issues exist for trial." *Griffith v. Linton* (1998), 130 Ohio App.3d 746, 753, 721 N.E.2d 146, citing *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 433 N.E.2d 615. Accordingly, it is well settled that summary judgment is a proper mechanism by which a trial court can hear the parties and determine whether an arbitration clause is applicable to a given dispute. See *Liese v. Kent State Univ.* at ¶ 40; *West v. Household Life Ins. Co.,* 170 Ohio App.3d 463, 2007-Ohio-845, 867 N.E.2d 868, ¶ 18; *T & R Ents., Inc. v. Continental Grain Co.* (C.A.5 1980), 613 F.2d 1272, 1276–1277.

{¶ 29} While a party's request for an oral hearing will be granted pursuant to R.C. 2711.03, an oral hearing is not mandatory absent a request. See, e.g., *Cross v. Carnes* (1998), 132 Ohio App.3d 157, 166, 724 N.E.2d 828; *Liese v. Kent State Univ.* at ¶ 43.

{¶ 30} " 'As a general rule, the doctrine of waiver is applicable to all personal rights and privileges, whether secured by contract, conferred by statute, or guaranteed by the Constitution * * *.' " *Sanit. Commercial Servs., Inc. v. Shank* (1991), 57 Ohio St.3d 178, 180–181, 566 N.E.2d 1215, quoting *State ex rel. Hess v. Akron* (1937), 132 Ohio St. 305, 307, 8 O.O. 76, 7 N.E.2d 411. As such, it is well settled that a person may waive rights and privileges secured by statute, including the statutory right to a hearing conferred by R.C. 2711.03. *Liese v. Kent State Univ.* at ¶ 44.

{¶ 31} It is therefore clear that the parties waived their right to a trial and an oral hearing by not requesting that the trial court conduct one and by not objecting to the manner in which the trial court proceeded to resolve the matter. *Liese v. Kent State Univ.*; *T & R Ents., Inc. v. Continental Grain Co.* In the same instance, however, the parties allowed themselves to be heard on the issue, as was required by R.C. 2711.03. The trial court conducted a nonoral hearing on DHI's motion to enforce the arbitration agreement on approximately July 5, 2006. Although an oral hearing was never conducted, the nonoral hearing allowed the parties to be heard, as required by R.C. 2711.03. *Liese v. Kent State Univ.*

### The Claims of Mark and Catherine D. Church

{¶ 32} R.C. Chapter 2711 does not set forth the amount of evidence that must be produced to receive a trial under R.C. 2711.03. However, "courts are directed to address the matter as they would a summary judgment exercise, proceeding to trial where the party moving for the jury trial sets forth specific facts demonstrating that a genuine issue of material fact exists regarding the validity or enforceability of the arbitration agreement." *Garcia v. Wayne Homes, L.L.C.* (Apr. 19, 2002), Clark App. No. 2001 CA 53, 2002 WL 628619; *McDonough v. Thompson*, 8th Dist. No. 82222, 2003-Ohio-4655, 2003 WL 22052777, ¶ 14.

{¶ 33} "A party to an arbitration agreement cannot obtain a jury trial merely by demanding one." *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (C.A.5 1992), 961 F.2d 1148, 1154. Further, under the *Dillard* analysis, a party contesting the "making" of the arbitration agreement must "make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true * * * [and] produce * * * some evidence to substantiate his factual allegations." *Id.* at 1154. See

also *T & R Ents., Inc. v. Continental Grain Co.* (C.A.5 1980), 613 F.2d at 1278; *Am. Heritage Life Ins. Co. v. Orr* (C.A.5 2002), 294 F.3d 702, 710; *McDonough v. Thompson,* 8th Dist. No. 82222, 2003-Ohio-4655, 2003 WL 22052777, ¶ 13.

{¶ 34} In the instant case, DHI submitted evidence in the form of an affidavit from Desjardins, the person who conducted the inspection of the Churches' house. In that affidavit, the inspector detailed his meeting with the Churches' real estate agent, including the fact that the inspection report was to be prepared for the Churches. The inspector noted that the realtor signed the pre-inspection agreement on behalf of the Churches both before and after the inspection of the home. The Churches did not offer any evidentiary materials in support of their position that the realtor did not have express or apparent authority to sign the pre-inspection agreement on their behalf. The arguments advanced by the Churches amount to nothing more than hollow, bald assertions. See *Bhatia v. Johnston* (C.A.5 1987), 818 F.2d 418, 421–422 (stating that self-serving affidavits do not amount to the type of evidence required to call the "making of the arbitration" agreement into question). *Am. Heritage Life Ins. Co. v. Orr.*

{¶ 35} In the case at bar, the Churches filed an amended complaint on June 19, 2006.

{¶ 36} Exhibit A of the Churches' amended complaint is titled "Real Estate Purchase Agreement." It is a four-page document that appears to be a preprinted form that Mark and Catherine D. Church, as buyers, completed and signed, and their real estate agent, Grisak, also signed. The section where Grisak's signature and information is located is titled "Agent's Information." Therefore, as it related to the purchase of the home, Grisak was the Churches' agent.

{¶ 37} Among other matters, the purchase agreement that the Churches and Grisak signed addresses inspections of the home. The section pertaining to inspections states that as part of the purchase of the home, the Churches elect to have a general home inspection, a radon inspection, an insect inspection, and a mold inspection. Further, the purchase agreement states:

{¶ 38} "B) INSPECTION: This Agreement shall be subject to the following inspection(s) by a qualified inspector of Buyer's choice within 14 days from the date of this Agreement. Buyer assumes sole responsibility to select and retain a qualified inspector for each requested inspection. * * *

{¶ 39} "All inspections are to be performed by CONTRACTOR(S) OF BUYER'S CHOICE, regardless of which party is paying for the inspection(s). Buyer or Buyer's agent is responsible to order the inspection(s)."

{¶ 40} The Churches requested that DHI conduct the general home inspection of the Deer Trail residence on August 9, 2003.

{¶ 41} As the above-quoted language establishes, the Churches agreed that they were solely responsible to select and retain a home inspector. Further, the quoted language acknowledges that the buyer's agent may have the authority to arrange for the inspection.

{¶ 42} The Churches made several changes to the purchase agreement, each of which was initialed by them. The Churches did not modify the paragraphs concerning the authority of the real estate agent to order the inspection of the home.

{¶ 43} In a case similar to the case at bar, the homeowner "entered into a contract with defendant Castle Inspections, Inc., a company that performs home inspections for prospective buyers. Plaintiff could not be present on the day of the inspection, so he arranged for his father to be present in his place. The father signed a pre-inspection agreement on plaintiff's behalf which contained a broadly worded clause binding the parties to arbitration in the event of a dispute on the agreement. Defendant's inspection revealed no discernable problems with water leakage in the basement. Plaintiff purchased the house and later discovered water in the basement." *Stocker v. Castle Inspections, Inc.* (1995), 99 Ohio App.3d 735, 651 N.E.2d 1052. In *Stocker* the plaintiff filed an amended complaint that asserted three causes of action alleging: (1) defendant negligently inspected the property, (2) defendant violated provisions of the Ohio Consumer Sales Practices Act, and (3) defendant breached the pre-inspection agreement. In response to the amended complaint, the defendant in *Stocker* filed a motion to dismiss the complaint or, in the alternative, to compel the parties to submit to arbitration as required by the contract. The trial court denied the motion.

{¶ 44} On appeal, the plaintiff argued that the arbitration provision did not apply to him since his father signed the agreement in his absence. The plaintiff argued that a submission to arbitration is beyond the implied or apparent powers of an agent. *Stocker,* 99 Ohio App.3d at 737, 651 N.E.2d 1052. In reversing the trial court's decision, the Court of Appeals for the Eighth District observed: "Plaintiff does not contend that the entire contract should be rescinded; in fact, his third cause of action seeks damages based upon defendant's alleged breach of the contract. Moreover, plaintiff makes no effort to show a failure of the contract itself. There is no allegation of fraud in the inducement or any other act by defendant that would make the contract unenforceable. Presumably, plaintiff and defendant lived up to their respective duties in the contract up to the point where the alleged breach occurred. Instead, plaintiff seeks to invalidate only that portion of the contract which binds him to arbitrate any dispute arising under the contract by asserting his father acted *ultra vires* in agreeing, in plaintiff's name, to arbitration." Id. The court in *Stocker* held:

{¶ 45} "In *Miller v. Wick Bldg. Co.* (1950), 154 Ohio St. 93, 42 O.O. 169, 93 N.E.2d 467, paragraph two of the syllabus states:

{¶ 46} " 'Even where one assuming to act as agent for a party in the making of a contract has no actual authority to so act, such party will be bound by the contract if such party has by his words or conduct, reasonably interpreted, caused the other party to the contract to believe that the one assuming to act as agent had the necessary authority to make the contract.' See, also, *Cascioli v. Cent. Mut. Ins. Co.* (1983), 4 Ohio St.3d 179, 181, 4 OBR 457, 459, 448 N.E.2d 126, 128.

{¶ 47} "Moreover, where the principal has placed the agent in a situation that a person of ordinary prudence, conversant in the nature of the particular business, is justified in assuming that the agent is authorized to perform on behalf of the principal, 'such particular act having been performed the principal is estopped as against such innocent third person from denying the agent's authority to perform it.' *Gen. Cartage & Storage Co. v. Cox* (1906), 74 Ohio St. 284, 294, 78 N.E. 371, 372.

{¶ 48} "In *Master Consol. Corp. v. BancOhio Natl. Bank* (1991), 61 Ohio St.3d 570, 575 N.E.2d 817, the court considered these legal principles and distilled them into the following syllabus:

{¶ 49} " 'In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.'

{¶ 50} "We find plaintiff's father, acting as agent, could sign the contract on plaintiff's behalf and, in the process, bind plaintiff to arbitrate any disputes arising from that contract. See *N & D Fashions, Inc. v. DHJ Industries, Inc.* (C.A.8 1976), 548 F.2d 722, 729 (purchasing agent of fabric buyer had apparent authority to enter any agreements reasonably necessary to sell, including arbitration agreement)." *Stocker,* 99 Ohio App.3d at 738, 651 N.E.2d 1052.

{¶ 51} In the case at bar, the Churches acknowledge that they accepted and paid for the inspection report. Their sixth cause of action in the case at bar is for breach of contract. The Churches have not presented any evidence concerning the existence of any contract other than the one that was signed by their real estate agent. The real estate agent, JoAnn Grisak, had at least apparent authority to enter any agreements reasonably necessary to the sale,

including an arbitrary agreement. In the absence of any expression to the contrary by the Churches, DHI was entitled to rely on this authority.

{¶ 52} Affirmative evidence exists in the record to show that Mark and Cathy Church are bound by the arbitration provision contained in the home-inspection agreement. Accordingly the trial court erred in failing to uphold the arbitration provision with respect to the claims of Mark and Cathy Church.

### The Claims of the Minor Child Catherine S. Church

{¶ 53} Appellant DHI next maintains that the minor child, Catherine S. Church is bound by the arbitration provision contained in the pre-inspection agreement. Under the facts of this case, we disagree.

{¶ 54} In their amended complaint, the Churches have alleged three causes of action against DHI: (1) breach of contract, (2) negligence, and (3) negligent misrepresentation.

{¶ 55} In order to recover on a negligence claim, a plaintiff must prove that (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, and (3) the breach of the duty proximately caused the plaintiff's injury. "The existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability." *Adelman v. Timman* (1997), 117 Ohio App.3d 544, 549, 690 N.E.2d 1332.

{¶ 56} The existence of a duty is a question of law. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265. Further, the existence of a duty depends on the foreseeability of the injury. *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 217, 556 N.E.2d 505. "Only when the injured person comes within the circle of those to whom injury may be reasonably anticipated does the defendant owe him a duty of care." *Adelman*, 117 Ohio App.3d at 549, 690 N.E.2d 1332. Additionally, an injury is foreseeable if a defendant knew or should have known his act was likely to result in harm to someone. *Huston*, 52 Ohio St.3d at 217, 556 N.E.2d 505. Once the existence of a duty is found, a defendant must exercise that degree of care that an ordinarily careful and prudent person would exercise under the same or similar circumstances. Id.

{¶ 57} Ohio has long recognized the right of a parent to maintain a derivative action against a third-party tortfeasor who injures the parent's minor child. See, e.g., *Grindell v. Huber* (1971), 28 Ohio St.2d 71, 57 O.O.2d 259, 275 N.E.2d 614, and *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10.

{¶ 58} Paragraph three of the syllabus in *Whitehead* reads:

{¶ 59} "Where a defendant negligently causes injury to a minor child, that single wrong gives rise to two separate and distinct causes of action: an action by the minor child for his personal injuries and a derivative action in favor of the parents of the child for the loss of his services and his medical expenses."

{¶ 60} *Whitehead* held:

{¶ 61} "Where a court determines, in an action by the parents of an injured minor child, that a defendant is not liable to the parents for the loss of services and medical expenses of the child, that judgment does not collaterally estop the child from bringing an action against that same defendant to recover damages for her personal injuries, so long as it does not appear from the record in that prior action that the child was a party, or that the child was a real party in interest, or that the child had control over that litigation, or that the parents and child were in privity." See also *Grindell v. Huber* (1971), 28 Ohio St.2d 71, 75, 57 O.O.2d 259, 275 N.E.2d 614.

{¶ 62} In *Gallimore v. Children's Hosp. Med. Ctr.* (1993), 67 Ohio St.3d 244, 617 N.E.2d 1052, the court extended this concept: "a parent may recover damages, in a derivative action against a third-party tortfeasor who intentionally or negligently causes physical injury to the parent's minor child, for loss of filial consortium. We further find that 'services' are just one aspect of consortium. 'Consortium' includes services, society, companionship, comfort, love and solace." Id. at 251, 617 N.E.2d 1052.

{¶ 63} Accordingly, in the case at bar, the *parents'* action for the loss of filial consortium and medical expenses of the child would be subject to the arbitration provisions of the pre-inspection agreement as set forth above.

{¶ 64} As the child's cause of action for personal injuries is separate and distinct from that of her parents' claims, it cannot be subject to the parents' agreement to arbitrate. The minor is not seeking to enforce any provision of that contract. Liability in such instance is not dependent upon any contractual relation between the person injured and the contractor but on the failure of the contractor to exercise due care in the performance of his obligation. The minor child need not rely on the terms of the written agreement in asserting her claims. It is not sufficient that the minor's claims "touch matters" concerning the agreement or that the claims are "dependent upon" the agreement. *Hill v. G.E. Power Sys., Inc.* (C.A.5, 2002), 282 F.3d 343, 348–349; *I Sports v. IMG Worldwide, Inc.*, 157 Ohio App.3d 593, 2004-Ohio-3113, 813 N.E.2d 4, ¶ 17. Although the minor child's claims may be dependent upon establishing DHI's breach of the agreement, she does not need to rely on the terms of the agreement in asserting her claims. Id.

{¶ 65} In *Auto–Owners Ins. Co. v. Old Time Roofing* (May 12, 2000), 7th Dist No. 98–CA–176, 2000 WL 652612, the court noted:

{¶ 66} "It has been stated that when contracting with one party:

{¶ 67} '[T]he defendant may place himself in such a relation toward [a third party] that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that [the third party] will not be injured. The incidental fact of the existence of the contract * * * does not negative the responsibility of the actor when he enters upon a course of affirmative conduct which may be expected to affect the interests of another person.' Prosser and Keeton, 667–668, § 93.

{¶ 68} 'The question is: Has the defendant broken a duty apart from the contract? If he has merely broken his contract, none can sue him but a party to it, but if he has violated a duty to others, he is liable to them.' Prosser and Keeton, 667–668, § 93."

{¶ 69} The scope of the contractor's duties to third parties is limited to the duties assumed under the contract. *Heneghan v. Sears, Roebuck and Co.* (1990), 67 Ohio App.3d 490, 494, 587 N.E.2d 854, see *Hendrix v. Eighth and Walnut Corp.* (1982), 1 Ohio St.3d 205, 1 OBR 230, 438 N.E.2d 1149; *Banks v. Otis Elevator Co.* (Dec. 17, 1987), Cuyahoga App. No. 53059, 1987 WL 29664; *Robinson v. J.C. Penney Co.* (May 20, 1993), Cuyahoga App. Nos. 62389 and 63062, 1993 WL 172981; *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 521 N.E.2d 780.

{¶ 70} The questions of whether DHI owed a duty to the minor child, the scope of any such duty, and whether DHI breached such duty are not before this court. The narrow question raised in this appeal is whether the minor child can be forced to arbitrate her claim for personal injuries.

{¶ 71} The child's cause of action for personal injuries does not arise out of any third-party-beneficiary status she might have under the inspection agreement. Rather, it arises from the injury she suffered because of the condition of the home. Therefore, Catherine S. Church, the minor child, cannot be compelled to arbitrate her personal-injury claim against DHI.

### Cross–Assignment of Error

{¶ 72} The Churches raise one cross-assignment of error, so to speak, in their brief. They argue that DHI has waived its right to enforce the arbitration clause. DHI contends that a cross-appeal was required and that this court should ignore the presented assignment of error.

{¶ 73} R.C. 2505.22 permits the filing of assignments of error by an appellee who has not appealed. The statute states: "In connection with an appeal of a

final order, judgment, or decree of a court, assignments of error may be filed by an appellee who does not appeal, which assignments shall be passed upon by a reviewing court before the final order, judgment, or decree is reversed in whole or in part."

{¶ 74} In *Parton v. Weilnau* (1959), 169 Ohio St. 145, 170–171, 8 O.O.2d 134, 158 N.E.2d 719, the Ohio Supreme Court stated that assignments of error of an appellee who has not appealed from a judgment may be considered by a reviewing court only to prevent "a reversal of the judgment under review."

{¶ 75} Further, "an assignment of error by an appellee, where such appellee has not filed any notice of appeal from the judgment of the lower court, may be used by the appellee as a shield to protect the judgment of the lower court but may not be used by the appellee as a sword to destroy or modify that judgment." Id. See also *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, 861 N.E.2d 109, ¶ 30–32.

{¶ 76} The waiver argument is clearly the "shield" envisioned in *Parton*. This argument, if successful, would reverse the holding that the claims of Mr. and Mrs. Church are subject to arbitration.

{¶ 77} We would note that the trial court did not expressly rule on the Churches' waiver argument. Nevertheless, when a trial court fails to rule on a pretrial motion, it may ordinarily be presumed that the court overruled it. *State ex rel. The V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198; *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 223, 631 N.E.2d 150; *Newman v. Al Castrucci Ford Sales* (1988), 54 Ohio App.3d 166, 561 N.E.2d 1001. From the trial court's judgment, it may be presumed that the court overruled the Churches' waiver argument.

{¶ 78} Essentially, the Churches argue that DHI waived the right to arbitration by participating in the litigation through filing discovery requests, participating in pretrial conferences, filing motions and waiting until the matter had been pending four months before formally requesting arbitration.

{¶ 79} In *Mauk v. Washtenaw Mtg. Co.*, 5th Dist. No. 03CA0019, 2003-Ohio-4394, 2003 WL 21981977, this court noted, "The determination as to whether arbitration has been waived is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Carter Steel & Fabricating Co. v. Danis Bldg. Constr. Co.* (1998), 126 Ohio App.3d 251, 710 N.E.2d 299. In order to find an abuse of that discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217 [5 OBR 481] 450 N.E.2d 1140." Id. at ¶ 11.

{¶ 80} "The essential question is whether, based on the totality of the circumstances, the party seeking arbitration has acted inconsistently with the right to arbitrate." *Harsco Corp. v. Crane Carrier Co.* (1997), 122 Ohio App.3d 406, 410, 701 N.E.2d 1040. To determine whether a defendant acted inconsistently with arbitration, the court should consider: " '(1) any delay in the requesting party's demand to arbitrate via a motion to stay judicial proceedings and an order compelling arbitration; (2) the extent of the requesting party's participation in the litigation prior to its filing a motion to stay the judicial proceeding, including a determination of the status of discovery, dispositive motions, and the trial date; (3) whether the requesting party invoked the jurisdiction of the court by filing a counterclaim or third-party complaint without asking for a stay of the proceedings; and (4) whether the non-requesting party has been prejudiced by the requesting party's inconsistent acts.' " Id. quoting *Phillips v. Lee Homes, Inc.* (Feb. 17, 1994), Cuyahoga App. No. 64353, 1994 WL 50696, and citing *Rock v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.* (1992), 79 Ohio App.3d 126, 606 N.E.2d 1054; *Brumm v. McDonald & Co. Securities, Inc.* (1992), 78 Ohio App.3d 96, 603 N.E.2d 1141.

{¶ 81} In *Mauk,* 2003-Ohio-4394, 2003 WL 21981977, this court found that the appellant had waived its right to arbitration by filing a motion to dismiss, engaging in discovery, obtaining a protective order, and waiting over seven months to formally request arbitration. The court found the appellant's argument in *Mauk*—that it was not aware of the arbitration provision pertaining to appellees—to be spurious.

{¶ 82} The case at bar is distinguishable from *Mauk.* In this case, the Churches filed their original complaint on February 1, 2006. On March 8, 2006, DHI answered denying the allegation of the complaint and asserting various affirmative defenses, including the claim that the Churches' claims were subject to the arbitration provision.

{¶ 83} Under the facts of this case, we are unwilling to find that the trial court abused its discretion by overruling the Churches' waiver argument.

{¶ 84} The Churches have named as additional defendants in the case at bar the previous homeowners and the home builder. Accordingly, this is not a case in which all claims are subject to arbitration resulting in a complete stay or dismissal of all causes of action. In other words, discovery, dispositive motions, and potentially a jury trial can conceivably occur with the remaining defendants. Thus, the expense and necessity of trial preparation will occur regardless of whether the Churches' claims against DHI are subject to arbitration.

{¶ 85} The Churches concede that DHI has not invoked the jurisdiction of the court by filing a counterclaim or third-party complaint.

{¶ 86} We cannot say that the Churches have been prejudiced by DHI's inconsistent acts. This is especially true in light of our decision that the minor child's claims are not subject to the arbitration provision contained in the pre-inspection agreement. Undoubtedly, discovery, dispositive motions, and potentially a jury trial will be necessary to resolve those claims.

{¶ 87} Our decision today is based upon the facts presented in this case. This court will continue to closely scrutinize whether a party seeking arbitration has acted inconsistently with the right to arbitrate.

{¶ 88} Upon review, we find that the trial court's conclusion from these facts cannot be termed an abuse of discretion.

{¶ 89} The Churches' cross-assignment of error is overruled.

## CONCLUSION

{¶ 90} Appellant's sole assignment of error is affirmed in part and overruled in part.

{¶ 91} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part and reversed in part, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

DELANEY, J., concurs.

HOFFMAN, J., concurs in part and dissents in part.

HOFFMAN, J., concurring in part and dissenting in part.

{¶ 92} I fully concur in the majority's thorough and well-reasoned analysis and disposition of appellant's sole assignment of error. And while I would agree that under the facts of this case, the trial court would not have abused its discretion in rejecting appellees' argument that DHI waived its right to arbitration, I respectfully dissent from the majority's conclusion that we should presume that the trial court did so based upon its failure to expressly rule thereupon.[1] While I agree that when a trial court fails to rule on a pretrial motion, it may ordinarily be presumed to have overruled it, such a presumption is not appropriate in this case.

---

1. I fully concur in the majority's analysis and conclusion that DHI was not required to file a cross-appeal and that raising the argument via a cross-assignment of error is the proper procedural mechanism to bring the issue before this court.

{¶ 93} Appellees did not file a pretrial motion requesting a ruling that DHI had waived its right to arbitration; rather, appellees raised the waiver argument in their response to DHI's request to enforce the arbitration agreement. No express ruling on a pretrial motion was necessary. Furthermore, because the trial court denied DHI's request to arbitrate on the basis that no evidence of agency existed, it became unnecessary for the trial court to consider appellees' waiver argument. Accordingly, I would refrain from addressing and deciding the merits of this issue unless and until the trial court is again requested to consider appellees' waiver argument and given an opportunity to exercise its discretion in ruling thereon.