[Cite as *Meros v. Sunbelt Rentals, Inc.*, 2023-Ohio-4313.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOHN MEROS, ET AL.,  :

      Plaintiffs-Appellants/  :
      Cross-Appellees,            Nos. 112483 and 112709

      v.  :

SUNBELT RENTALS, INC., ET AL.,  :

      Defendants-Appellees/
      Cross-Appellants.  :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 30, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas,
Case No. CV-17-890793

---

### *Appearances:*

Flowers & Grube, Paul W. Flowers, and Kendra N. Davitt; The Linton Law Firm Co., L.P.A., Robert F. Linton, Jr., and April Bensimone; Zipkin Whiting Co., L.P.A., and Lewis A. Zipkin; The Penn Law Firm P.C., and Eric T. Penn, pro hac vice, *for appellants and cross-appellees*.

Reminger Co., L.P.A., Brian D. Sullivan, Clifford C. Masch, William A. Meadows, Richard J. Rymond, and Joseph T. Palcko, *for appellees and cross-appellants*.

SEAN C. GALLAGHER, J.:

{¶ 1} Candice Matthews, as fiduciary of the Estate of Tanisha M. Matthews,[1] and Asiah T. Matthews (collectively, for ease of reference, "appellants") appeal the trial court's decision granting summary judgment in favor of Concentra Health Services, Inc. The trial court concluded that the drug-testing company did not owe a duty to monitor and detect an employee's use of synthetic urine while performing drug-testing services as that duty relates to a third party injured by the employee, who operated a motor vehicle while under the influence of illegal narcotics causing the fatal accident. For the following reasons, we affirm.

{¶ 2} The facts are utterly tragic, and more so compounded by the sympathetic lens through which they are presented. Sunbelt Rentals, Inc., employed Clark Justen as a mobile mechanic. Justen was addicted to opioids. That addiction spiraled into a heroin addiction after Justen was unable to obtain a prescription from his physician. While driving a Sunbelt truck, Justen purchased and then ingested heroin, which unbeknownst to him was laced with fentanyl and cocaine. As he drove under the influence on I-480 at approximately 65 m.p.h., Justen swerved onto the shoulder hitting Tanisha and Asiah Matthews, then respectively aged 27 and 23 years old, who were changing a flat tire on their car with three children inside. Tanisha was killed instantly, but Asiah survived with serious, life-changing injuries.

---

[1] During the proceedings below, appellants were granted leave to substitute Candice Matthews for John Meros as the new fiduciary for Tanisha Matthews's estate.

{¶ 3} Justen's history of drug abuse was extensive. Approximately three years before the tragedy, Justen sought work with Sunbelt, which required a preemployment, non-monitored drug test as a condition of employment. Justen submitted to the testing but used synthetic urine to cover his then use of Opana, a prescription opioid he had been receiving through a physician who was later charged with trafficking. A year before the collision at issue, Justen was involved in what appears to be a minor accident in which he rear-ended an unrelated party. Sunbelt sent Justen for another non-monitored drug test, but that was again defeated through Justen's use of the undetected synthetic urine. There is no evidence that either of the tests would have disclosed Justen's use of the opioids at the time; the screening would not have detected or disclosed the use of that particular narcotic. Opana can be legally prescribed and used to treat medical conditions. It was after the last screening that Justen began using heroin, a substance that would be tested for through the general screening. Under Sunbelt's employment policy, however, the use of synthetic urine constituted grounds for immediate dismissal.

{¶ 4} The synthetic urine product Justen used was geared toward cheating the drug-testing agency. It resembled natural urine in appearance, although not in its odor or its ability to foam when shaken, according to appellants' expert Richard Rodgers, II, D.C., a certified urine drug collector. Rodgers claimed that he was able to smell the difference between synthetic and natural urine, citing a chemical odor as the baseline for detecting the synthetic variation. In practice, Rodgers detected the use of synthetic urine in five percent of the tests he monitored, but there is no

discussion regarding his error rate. The synthetic urine kit Justen purchased and used also came with instructions and hand warmers to obtain the necessary temperature of the sample to fool administrators.

{¶ 5} Synthetic urine packages such as this are sold at various retail outlets and are currently legal under Ohio law. The legality of a product for which the sole purpose seems geared to defeating drug-testing requirements baffles the mind. That, however, is a policy question within the sole purview of the General Assembly.[2]

{¶ 6} According to appellants, Concentra failed to exercise reasonable care in collecting the urine specimen by failing to install measures to detect the use of synthetic urine and that constituted a breach of the duty Concentra owed appellants as members of the general public. On this point, appellants rely on their expert's opinion that Concentra failed to have its monitors smell the urine specimen to determine whether it was synthetic or natural or shake the substance to check its foaming characteristics.

{¶ 7} Sunbelt settled the claims with the appellants, but not before Concentra was dismissed through summary judgment proceedings. The issues below are the same as raised in this appeal and focus on whether Concentra, as a

---

[2] The Ohio legislature first attempted to pass 2019-2020 Am.Sub.S.B. No. 156, 133d General Assembly, to criminalize the sale or possession of synthetic urine. If codified, R.C. 2925.15 would criminalize the manufacture, marketing, sale, distribution, or possession of synthetic urine under certain conditions. That bill stalled. The 134th General Assembly picked up the mantle with the same draft language in S.B. No. 25, but that provision was removed from the final version of the bill.

drug-testing agency, owes a duty to the public to detect an employee's use of synthetic urine through its contractual obligation with the tortfeasor's employer.

{¶ 8} Summary judgment rulings are reviewed de novo, and appellate courts apply the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Review of summary judgment is governed by the standard set forth in Civ.R. 56. *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 14. Summary judgment is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a matter of law, and [3] viewing the evidence in the light most favorable to the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*, citing *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12. Appellate courts provide no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

{¶ 9} In order to maintain a wrongful death action and any other "'theory of negligence, a plaintiff must show (1) the existence of a duty owing to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death.'" *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities*, 102 Ohio St.3d 230, 2004-Ohio-2629, 809 N.E.2d 2, ¶ 14, quoting *Littleton v. Good Samaritan Hosp. & Health Ctr.*, 39 Ohio St.3d 86, 92, 529 N.E.2d 449 (1988). "'The existence of a duty is a question of law for a court to decide, even if resolving that question requires the court to consider the facts or evidence.'"

*A.M. v. Miami Univ.*, 2017-Ohio-8586, 88 N.E.3d 1013, ¶ 33 (10th Dist.), quoting *Martin v. Lambert*, 2014-Ohio-715, 8 N.E.3d 1024, ¶ 17 (4th Dist.). Appellants' negligence-based tort claims all fall under the same rubric — each of the alleged tort claims require appellants to demonstrate that Concentra owed a duty to the general public to detect Justen's use of synthetic urine in defeating his drug-testing requirement.

{¶ 10} In this appeal, appellants advance several claims in support of their argument that Concentra's duty is established as a matter of law. Appellants first claim that "everyone owes a responsibility to use reasonable care to prevent foreseeable harm to others," citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680, 693 N.E.2d 271 (1998); *Huston v. Konieczny*, 52 Ohio St.3d 214, 217, 556 N.E.2d 505 (1990); *Commerce & Indus. Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989). This argument is overly broad.

{¶ 11} The term "duty" denotes the relationship between a plaintiff and a defendant, and it is from that relationship that an obligation is created for the defendant to exercise reasonable care toward the plaintiff. *Crumb v. LeafGuard by Beldon, Inc.*, 8th Dist. Cuyahoga No. 108321, 2020-Ohio-796, ¶ 31, quoting *Wallace v. Ohio DOC*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 23, and *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989). The duty of reasonable care generally does not include a duty to protect third parties. *Godwin v. Facebook, Inc.*, 2020-Ohio-4834, 160 N.E.3d 372, ¶ 41 (8th

Dist.), citing *Hill v. Sonitrol of S.W. Ohio*, 36 Ohio St.3d 36, 521 N.E.2d 780 (1988). "Foreseeability alone does not create a duty; instead, it is one of a number of factors that must be considered." *Estates of Morgan v. Fairfield Family Counseling Ctr.*, 77 Ohio St.3d, 293, 673 N.E.2d 1311 (1997); *Santana v. Rainbow Cleaners, Inc.*, 969 A.2d 653, 666 (R.I.2009), citing *Ferreira v. Strack*, 636 A.2d 682, 688 n. 4 (R.I.1994). There is no duty to control the conduct of a third person to prevent the commission of physical harm to another person "unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relationship exists between the actor and the other which gives to the other the right to protection." *Hite v. Brown*, 100 Ohio App.3d 606, 613, 654 N.E.2d 452 (8th Dist.1995), citing *Gelbman v. Second Natl. Bank of Warren*, 9 Ohio St.3d 77, 79, 458 N.E.2d 1262, 1263 (1984), and *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*, 45 Ohio St.3d 171, 173, 543 N.E.2d 769 (1989), fn. 1.

{¶ 12} Ohio law generally recognizes a special relationship giving rise to a duty to protect another as between a business owner and invitee, a common carrier and its passengers, an innkeeper and its guests, a possessor of land and an invitee, a custodian and individual taken into her custody, and an employer and her employee. *Simpson v. Big Bear Stores Co.*, 73 Ohio St.3d 130, 135, 652 N.E.2d 702 (1995); *Jackson v. Forest City Ents., Inc.*, 111 Ohio App.3d 283, 285, 675 N.E.2d 1356 (8th Dist.1996), citing Restatement of the Law 2d ("Second Restatement"), Torts 122, Section 314A. Appellants do not claim any of those special relations are implicated

as between an employer-hired drug-testing agency and the general public but solely rely on an argument that Concentra controlled Justen during the specimen-collection process, giving rise to a duty to control Justen's conduct after he departed its facility.

{¶ 13} Under the traditional Restatement analysis, there are five recognized "special relations" that justify imposition of liability for nonfeasance — the duty to protect third parties from the conduct of another. Only one of those is implicated by appellants' argument: that an actor in charge of a person with dangerous propensities owes a duty to control such a person. Restatement Second, Section 319. "In the absence of a special relationship sufficient to trigger one of these exceptions, a private party is not liable for failing, either intentionally or inadvertently, to exercise control over the actions of a third party so as to protect others from harm." *McCloskey v. Mueller*, 446 F.3d 262, 268 (1st Cir.2006). Although appellants argue that Concentra controlled Justen during the collection process, that control terminated upon Justen's departure from their facilities; and moreover, appellants failed to establish that Justen possessed "dangerous propensities" within the meaning of the Restatement analysis giving rise to the duty to control Justen's conduct to prevent harm to others.

{¶ 14} This conclusion impacts appellants' reliance on *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.,* 45 Ohio St.3d 171, 543 N.E.2d 769 (1989), for the proposition that a "person [who] exercises control over real or personal property and such person is aware that the property is subject to repeated third-party

vandalism, causing injury to or affecting parties off the controller's premises," owes a duty "to those parties whose injuries are reasonably foreseeable, to take adequate measures under the circumstances to prevent future vandalism." This duty is based on the special relations between the tortfeasor and the possessor of property, who had the ability to control the tortfeasor while that person was present on the possessor of land's property. Generally, that duty is extinguished when the tortfeasor departs the property of the other. *See, e.g., Fletcher v. Maryland Transit Administration*, 741 Fed.Appx. 146, 151 (4th Cir.2018) (school system is not "in charge" of its students after hours and off the school grounds for the purposes of controlling the conduct of those who injure others).

{¶ 15} Further, *Fed. Steel & Wire* depends on the duty to control the conduct of the tortfeasor to prevent injury to a third party. In this case, appellants' theory depends on their establishing the existence of a duty arising between the general public and Concentra, such that Concentra owes a duty to the general public to protect them from the harm caused by Justen based on a relationship between Concentra and the general public. Those two concepts, the duty to protect arising from the special relations between the actor and the injured party and the duty to control the acts of another arising from the special relations between the actor and the tortfeasor, are separate and distinct. *See Godwin*, 2020-Ohio-4834, 160 N.E.3d 372, at ¶ 19 (8th Dist.). There are no allegations in the complaint that Concentra shared a special relation with appellants for the purpose of establishing a duty of protection that would implicate Restatement Second, Section 315 — the duty to

protect the injured person. *See, e.g., Simpson*, 73 Ohio St.3d 130, 135, 652 N.E.2d 702 (1995) (although a business owner owes a duty to protect business invitees from criminal acts it knows or should have known of the substantial risk presented under Restatement Second, Section 315, that duty does not extend off the business owner's premises). Appellants' argument is a broad amalgamation of distinct concepts giving rise to liability. At points in the discussion, appellants speak of Concentra's duty to control the conduct of Justen, while their main argument rests with establishing a duty owed to the general public. We cannot accept this broad discussion as a basis to reverse. *Fed. Steel & Wire* is not applicable.

{¶ 16} Further complicating appellants' broad generalization of the duty element, as is applicable in this case, Concentra was hired by Sunbelt to perform an on-demand task.[3] If there is a duty owed by the independent contractor to third parties, that duty arises under the terms of the contract: "The scope of the contractor's duties to third parties, if any, is generally limited to the duties assumed under the contract." *Krause v. G & C Properties*, 8th Dist. Cuyahoga No. 66379, 1994 Ohio App. LEXIS 4941, 6 (Nov. 3, 1994), citing *Heneghan v. Sears, Roebuck & Co.*, 67 Ohio App.3d 490, 494, 587 N.E.2d 854 (8th Dist.1990), *Hendrix v. Eighth & Walnut Corp.*, 1 Ohio St.3d 205, 438 N.E.2d 1149 (1982), *Banks v. Otis Elevator Co.*, 8th Dist. Cuyahoga No. 53059, 1987 Ohio App. LEXIS 10081 (Dec. 17, 1987), *Robinson v. J.C. Penney Co.*, 8th Dist. Cuyahoga Nos. 62389 and 63063, 1993 Ohio

---

[3] It does not appear from the record that Concentra was hired to monitor employees. It was hired to perform drug-testing services, limited to collecting the specimens, upon request by Sunbelt.

App. LEXIS 2633 (May 20, 1993), and *Hill,* 36 Ohio St.3d 36, 521 N.E.2d 780 (1988); *see also Church v. Fleishour Homes, Inc.,* 172 Ohio App.3d 205, 2007-Ohio-1806, 874 N.E.2d 795, ¶ 69 (5th Dist.) (collecting cases). Appellants have not included any discussion with respect to interplay between the tort standard and the contractual terms of Sunbelt and Concentra's relationship.

{¶ 17} Because appellants' argument is solely based on their presumption that Concentra owes a general duty to the public based on the general notion that all persons owe a duty to all others under Ohio law, we cannot conclude that the trial court erred. *See* App.R. 16(A)(7). It suffices for the purposes of this appeal that appellants' argument to the effect that Concentra owes a general duty of care to protect third parties is not sufficient to establish the existence of reversible error in light of black-letter law that independent contractors do not owe a duty of care to third parties, especially in situations in which the plaintiff has not established the existence of a special relationship with the defendant. *See id.*

{¶ 18} Appellants next claim that Concentra is subject to liability under the negligent undertaking doctrine as set forth in Restatement Second, Section 324A (1965). That provision provides that

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

It is not the actor's undertaking of a task in and of itself, however, that subjects the actor to potential liability. *Derosia v. Liberty Mut. Ins. Co.*, 155 Vt. 178, 583 A.2d 881, 883-884 (Vt. 1990), quoting Restatement Second, Section 324A. It is the "'failure to exercise reasonable care to protect his undertaking,' resulting in either (a) an increased risk of physical harm to the third person, (b) the assumption by the actor of a duty owed by the second person to the third person, or (c) harm to the third person resulting from reliance on the undertaking by the second or third persons." *Id.*

{¶ 19} According to appellants, Concentra is subject to liability because "Concentra knew or should have known" that the employer requested drug tests to "protect the public from the physical harm and property damage caused by drug-impaired employees, particularly those required to operate the employer's cars, trucks, heavy equipment, and even airplanes." From that basis, appellants claim that had Concentra identified the existence of synthetic urine being used to defeat the tests, Justen would not have been employed by Sunbelt and in a position to drive on the highway when he collided with the victims.

{¶ 20} Appellants' argument is novel in that they seek to hold the drug-testing agency liable for the illegal conduct of one who was drug tested; however, it overlooks several distinctions in their request to apply Restatement Second,

Section 324A in order to establish the existence of a duty as between Concentra and appellants. That section does not establish a duty as between the actor and the third party — the question presented to this court for review.

{¶ 21} Under Section 324A, one who undertakes to render services is "subject to liability" to a third person if one of three conditions is met. The phrase "subject to liability," "denote[s] the fact that the actor's conduct is such as to make him liable for another's injury, if the actor's conduct is *a legal cause* thereof, and the actor has no defense applicable to the particular claim." (Emphasis added.) Restatement Second, Section 5 (1965). In order to be subject to liability, the actor's conduct must first be the "legal cause" of the legally protected interest at issue. *Id.* at Comment a. The phrase "legal cause" is further defined as the "causal sequence by which the actor's tortious conduct has resulted in an invasion of some legally protected interest of another" "such that the law holds the actor responsible for such harm." Restatement Second, Section 9 (1965). In explaining "legal cause," the drafters stated that

> [i]n order that a particular act or omission may be the legal cause of an invasion of another's interest, the act or omission must be a substantial factor in bringing about the harm, and there must be no principle or rule of law which restricts the actor's liability because of the manner in which the act or omission operates to bring about such invasion.

*Id.* at Comment b.

{¶ 22} Appellants' argument in support of adopting Section 324A as a foundation to create a duty owed as between a drug-testing agency employed by another company and a member of the general public does not include any

discussion or relevant authority to explain whether Ohio's general authority establishing that no person or corporate entity owes a duty to protect third parties from harm constitutes a restriction to the actor's liability and that an independent contractor's duties owed to third parties is limited to their duty established through their contract with another. We will not independently weigh in on that question based on the overly broad brush with which appellants painted their arguments.

{¶ 23} In additional support of their argument as to the applicability of Section 324A, appellants cite *Stevens v. Jeffrey Allen Corp.*, 131 Ohio App.3d 298, 722 N.E. 533 (1st Dist.1997). In that case, a motorist was killed after an oak tree situated on the land owned or possessed by a public library fell on the plaintiff's vehicle van during a severe thunderstorm. Before the accident, an independent contractor was hired to develop a grounds-maintenance program, including tree inspections that never occurred. In an appeal from a defense verdict, the First District panel recognized that the library was a property owner responsible for ensuring that its trees did not endanger others and this duty extended to members of the traveling public, including that plaintiff. The panel approvingly cited Section 324A and concluded that because the library had hired the contractor to fulfill this obligation, the plaintiff was entitled to seek recovery for the contractor's negligence in fulfilling the duty owed by the landowner through the voluntary undertaking. *Id.* at 305.

{¶ 24} That reliance on the Restatement Second, Section 324A in *Stevens* is curious. Under black-letter Ohio law, an employer of a contractor is generally not

liable for the conduct of an independent contractor hired to perform a task, subject to the well-known exceptions for nondelegable duties or inherently dangerous tasks. *Pusey v. Bator*, 94 Ohio St.3d 275, 279, 762 N.E.2d 968 (2002). In other words, when an independent contractor is hired to undertake a duty owed by another, the employer of that independent contractor is not liable to a third party for any negligent act of the contractor unless the duty was nondelegable. If the independent contractor is negligent in the manner of performance of its task, the contractor itself may be held liable based on its duty to perform its contractual obligations to completely undertake the duty owed by the landowner with reasonable care as owed to third parties. *See, e.g., Crumb*, 8th Dist. Cuyahoga No. 108321, 2020-Ohio-796, at ¶ 31-38. Ohio largely recognizes the concepts distilled in Section 324A, but that duty arises through the contractual relationship between the independent contractor and the person or entity that hired them. *See Krause,* 8th Dist. Cuyahoga No. 66379, 1994 Ohio App. LEXIS 4941, at 6; *see also Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, 957 N.E.2d 3. Again, appellants have not fully explained the interplay between the contractual obligations and their tort claims against the independent contractor. We cannot substitute our own analysis on their behalf. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19.

{¶ 25} And regardless, *Stevens* is distinguishable. In *Stevens*, it was concluded that the landowner owed a duty to inspect trees on its property to prevent harm to others. *Id.* In fulfillment of that duty, the landowner hired an independent

contractor to completely take on the landowner's duty, thereby extinguishing the landowner's liability to others for any negligent inspection of the trees on its property. Sunbelt, on the other hand, was under no obligation to drug test its employees, a point appellants conceded during oral argument,[4] unless those employees were subject to Ohio Department of Transportation drug-testing requirements. It is undisputed that Justen was not required to submit to drug tests for the state agency. Sunbelt thus voluntarily undertook the drug-testing obligation, and through that voluntary undertaking, employed Concentra to collect the urine specimen — its sole function. But Sunbelt's liability for the conduct of its employees, like Justen, was never extinguished. Sunbelt was vicariously liable for the motor vehicle accident its employee caused. In other words, appellants' argument is that Sunbelt, arguably, voluntarily undertook a duty to the public to drug test its employees and Concentra then voluntarily undertook the responsibility of collecting the samples for testing. *Stevens* does not answer the question of whether Concentra can be subject to liability built on another person or entity's own voluntary undertaking.

{¶ 26} On this final point, appellants rely on the line of authority establishing that drug-testing agencies owe a duty of care to the employees being tested to avoid false-positive results: *Stinson v. Physicians Immediate Care, Ltd.*, 646 N.E.2d 930, 934 (Ill.App.1995); *Landon v. Kroll Laboratory Specialists, Inc.*, 91 N.Y.A.D.3d 79,

---

[4] Appellants maintained that Justen was not subject to mandatory Ohio Department of Transportation drug-screening protocols and that Sunbelt voluntarily instituted the random drug-testing procedures for all its employees.

934 N.Y.S.2d 183, 194 (N.Y.A.D.2011), *aff'd*, 999 N.E.2d 1121 (N.Y.2013); *Sharpe v. St. Luke's Hosp.*, 573 Pa. 90, 821 A.2d 1215, 1221 (2003); *Shaw v. Psychemedics Corp.*, 426 S.C. 194, 826 S.E.2d 281, 283-284 (2019); *Mendez v. Houston Harris Area Safety Council, Inc.*, 634 S.W.3d 154, 163 (Tex.App.2021); *Duncan v. Afton, Inc.*, 991 P.2d 739, 746 (Wyo.1999). These cases are not applicable. In those cases, the question of liability focused on the individual test being performed, and the individual harmed was one contemplated under the contractual agreement as between the drug-testing agency and the employer. And moreover, the harm caused by the alleged negligent act was immediate; the false-positive caused the employer to sanction the employee.

{¶ 27} In this case, the harm at issue is removed from the temporal immediacy found in the above-mentioned duty-to-the-employee cases. Further, providing voluntary, on-demand drug-testing services does not create a duty to monitor an employee's daily activity. It is a snapshot in time meant to illuminate potential employment issues. Without more, we cannot conclude that those cases are applicable to resolving the legal question presented in this appeal regarding the duty to protect third parties from the harm caused by the illegal actions of another person.

{¶ 28} The existence of a duty hinges on the relationship between the parties.[5] In this case, appellants and Concentra share no relationship giving rise to

---

[5] Appellants also claim that federal regulations require drug-testing agencies to confirm the sufficiency of the specimen provided and its temperature, and to check the "color, foam, and odor of the sample." Appellants' argument on this point is limited, and

a legal duty to protect. Under black-letter law, absent a special relationship, there is no duty to protect third parties from physical harm caused by others. Because appellants have not established the existence of a special relationship with Concentra, we default to the general proposition that Concentra does not owe a duty to the general public to protect them from others engaging in illegal activity.[6]

{¶ 29} The decision of the trial court is affirmed.

It is ordered that appellees, cross-appellants recover from appellants, cross-appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

FRANK DANIEL CELEBREZZE, JR., P.J., and
MICHAEL JOHN RYAN, J., CONCUR

---

they do not provide any authority demonstrating that a duty is created as between the drug-testing agency and the general public based on the federal regulations. It is not this court's responsibility to provide arguments and a discussion on undeveloped arguments.

[6] In light of this conclusion, we need not address Concentra's argument regarding superseding causation or the cross-appeal in which Concentra appealed the trial court's resolution of an issue with apportionment as between nonparties.